# Brill & Associates, P.C.

HAYDN J. BRILL[†]
COREY M. REICHARDT[†]
JAIME M. MERRITT[‡]
ALANA N. GARDNER[†]

[†] NY & NJ

*Attorneys at Law*
*111 John Street, Suite1070*
*New York, New York 10038*
*(212) 374-9101*
*Facsimile (212) 374-9108*

*New Jersey Office*

*44 Hawthorne Drive*
*Princeton Junction, N.J.*
*08550*

April 24, 2008

Via ECF

The Honorable Shira A. Scheindlin
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    C.D. Kobsons, Inc. v. United National Specialty Insurance Company
       Docket No.    07 CV 11034 (SAS)

Dear Judge Scheindlin:

We write as counsel to plaintiff, C.D. Kobsons, Inc. in connection with the above referenced matter. I have received Mr. Benson's letter of April 21, 2008 and would like to address the matters raised in that correspondence in preparation for the pre-motion conference and also to request leave of court to file a motion to amend the plaintiff's Reply to the defendant's counterclaim for the purpose of asserting an affirmative defense based on election of remedies. We wrote to the defendant seeking their consent to this request on April 11, 2008 and were advised that they would not consent to the amendment. As the court will see, the amendment requires no additional discovery and, in this case, the relief sought is in the nature of conforming the plaintiff's Reply to the proofs adduced in discovery.

By this action, plaintiff, C.D. Kobsons, Inc. challenges termination of its insurance policy issued by defendant United National Specialty Insurance Company. As the court may recall, United National originally issued the subject Commercial General Liability policy to the plaintiff on June 15, 2004. Thereafter, United arranged to have the premises inspected by A. David & Associates, Inc. A copy of that inspection report is attached hereto as **Exhibit A**. This was the first and only inspection conducted of the property. The policy was renewed on June 15, 2005, June 15, 2006 and June 15, 2007.

On or about October 23, 2007, during the term of the fourth policy year, plaintiff received, and thereafter provided to defendant, an "Unsafe Building Notice" from the NYC Department of Buildings. After having received the notice, United concluded that there had been a material change in the nature or extent of the risk it insured at some point between June 15, 2007 (the date of the last policy renewal) and October 25, 2007 (the date of the Termination

Notice) warranting termination of the coverage. These are the relevant dates the court must examine under Section 3426(c)(1)(E) of the New York State Insurance Law, which was the basis of United's Termination Notice. **Exhibit B**. The Termination Notice was mailed on October 25, 2007, and effective November 27, 2007.

As noted, United chose to terminate plaintiff's policy pursuant to Section 3426(c)(1)(E) of the New York State Insurance Law which allows an insurance carrier to terminate a policy based upon a material change in the risk. Section 3426(c)(1)(E) provides that:

> (c) After a covered policy has been in effect for sixty days unless cancelled pursuant to subsection (b) of this section, or on or after the effective date if such policy is a renewal, no notice of cancellation shall become effective until fifteen days after written notice is mailed or delivered to the first-named insured and to such insured's authorized agent or broker, and such cancellation is based on one or more of the following:

> (1) With respect to covered policies:

> (E) material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, which results in the property becoming uninsurable in accordance with the insurer's objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

While United alleges that it was not made aware of violations issued to plaintiff by the NYC Department of Buildings between 2005 and 2007, United did not terminate the policy pursuant to Section 3426(c)(1)(C) of the New York State Insurance Law, which allows an insurer to terminate a policy on the basis on fraud or material misrepresentation. Section 3426(c)(1)(C) provides:

> (c) After a covered policy has been in effect for sixty days unless cancelled pursuant to subsection (b) of this section, or on or after the effective date if such policy is a renewal, no notice of cancellation shall become effective until fifteen days after written notice is mailed or delivered to the first-named insured and to such insured's authorized agent or broker, and such cancellation is based on one or more of the following:

> (1) With respect to covered policies:

(C) discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim thereunder;

Thus, United's reliance upon plaintiff's purported failure to disclose violations issued by the Department of Buildings is entirely misplaced. As United chose to terminate plaintiff's policy pursuant to 3426(c)(1)(E), and not Section 3426(c)(1)(C), United has elected its remedy in this case and should not be heard to complain of fraud or material misrepresentation in plaintiff's procurement of plaintiff's coverage.   In fact, no termination notice has ever been served on plaintiff pursuant to Section 3426(c)(1)(C).

With regard to the sole grounds upon which United terminated the plaintiff's policy, there are clearly questions of fact which would make this court's consideration of summary judgment motions a waste of judicial resources.

United fails to advise the court that on June 23, 2004, after it issued plaintiff's policy, United arranged to have the building inspected by A. David & Associates, Inc. The inspection, which included an examination of the interior and exterior of the property as well as judgment searches, concluded that the building appeared to be "structurally sound" and not in need of any significant repairs.

The actual condition of the building, however, was significantly more complicated than reported by United's own inspector.  Attached as **Exhibit C** is a report dated September 7, 2005, from Dubinsky Consulting Engineers, P.C., who was retained by plaintiff in 2005 to examine the subject premises.  From reading the report of Mr. Dubinsky, a licensed P.E. in the State of New York, it is clear that the there were structural problems in the insured risk dating back to 2005 and which continued to exist at the time that the policy was renewed by United on June 15, 2007.

As noted in Mr. Dubinsky's report,

1.  Inspection of the premises revealed numerous cracks, holes and missing bricks;
2.  The south wall of the building, which was a load bearing wall, was bulging out above street level and was in danger of further deterioration and possibly collapse;
3.  The basement revealed major cracks and missing masonry piers supporting the front masonry wall and a portion of the sidewalk which required shoring;
4.  The North wall had numerous diagonal and horizontal cracks, damaged stone windowsills and lintels requiring major repairs;
5.  The interior wood stair between the floors was warping and leaning away from the exterior walls and that the stair landings and hallways were sloping to the center of the building; and,
6.  The floors and ceilings in the building were deflected (sagging) and needed to be shored.

This need for repair work in the building was again documented by Mr. Dubinsky on February 26, 2007, in a letter to the DOB which discussed the status of the sagging floors and warped staircases (**Exhibit C**) and by the Department of Buildings in March, 2007, shortly before renewal of the United policy. As documented by the testimony of Naweed Chaudhri, who

was deposed as a nonparty witness in this case, and pertinent e-mails from and to others in the Department of Buildings, including an e-mail dated March 21, 2007, from Thomas Lynch, a principal engineer in the Forensic Engineering Unit of the DOB, the building was determined to be in need of structural repairs "consistent with its construction, age and . . . years of deferred maintenance." **Exhibit D.** As noted in the report of Mr. Lynch, there were deflected floors around the stairwells which required shoring in the building. These observations were consistent with Mr. Dubinsky's original report in 2005 and demonstrate that little physical change, if any, other than normal wear and tear, occurred in the building between the June 15, 2007 renewal and October 25, 2007 (the date the Termination Notice was mailed) to warrant termination of the United policy based on material changes in the risk. A detailed report of the building compiled by Mr. Chaudhri was completed on September 14, 2007. **Exhibit E.** Mr. Chaudhri acknowledged that the conditions in his report would have existed for at least two years prior to the date of the report and were consistent with Mr. Dubinsky's findings. In fact, Mr. Chaudhri admitted in his deposition that the only reason the Department of Buildings issued the Unsafe Building notice was to force the plaintiff to effectuate repairs in the building. As noted by Mr. Lynch in his March, 2007 e-mail, while repairs to the building were needed, the subject premises were deemed to be "structurally sound". Despite issuance of the Unsafe Building notice, the DOB not issue a vacate order to the building occupants. The existence of DOB's belief that the condition of the building did not pose any immediate risk to the health or safety of the building occupants seems to be lost on United National in seeking to move for summary judgment in this case.

The law pertaining to a motion for summary judgment is clear. A party seeking summary judgment bears the burden of establishing that "there is no genuine issue as to any material fact" so that judgment in the moving party's favor under Federal Rules of Civil Procedure Rule 56 would be appropriate. Fed.R.Civ.P. Rule 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986) and *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2nd Cir.1997)(*accord*). The burden then shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Any ambiguities are to be resolved by the court with all reasonable inferences drawn in favor of the nonmoving party. *Goldin Associates, LLC v. Donaldson, Lufkin & Jenrett*, 2004 WL 1119653 at 2 (S.D.N.Y) *citing Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2nd Cir.2001). A genuine issue of material fact exists to preclude summary judgment where, when all inferences are taken in the light most favorable to the nonmovant, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See also Cronin v. Aetna Life Insurance*, 46 F.3d 196, 202 (2nd Cir.1995); *Trustees of the Eastern Health and Welfare Fund v. Crystal Art Corp.*, 2004 WL 1118245, at *2 (S.D.N.Y.) ("[I]n reviewing the record, courts must assess 'the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party.'" quoting *Frito- Lay, Inc. v. LTV Steel Co.*, 10 F.3d 944, 957 (2nd Cir.1993)).

Summary judgment should only be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates a finding in favor of summary judgment

where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," in order to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In meeting this affirmative burden, the nonmoving party must produce admissible evidence from the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2nd Cir.1993). *See also Scotto v. Almenas*, 143 F.3d 105, 114-15 (2nd Cri.1998). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment must be granted. *Matsushita*, 475 U.S. at 587 quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 289 (1968).

Here, the documentary evidence is clear that there was, in fact, no material change in the condition of the insured risk between June 15, 2007 and October 23, 2007 and that United's termination notice was improper. Accordingly, we would respectfully request that the court dispense with summary judgment motions and allow this case to move directly to trial as scheduled.

Furthermore, as it is the policy of the courts to liberally allow amendments to the pleadings absent prejudice to the opponent, we would respectfully request leave to move to amend plaintiff's Reply to defendant's counterclaim to formally assert an affirmative defense based on election of remedies and to allow plaintiff to conform its pleadings to the proofs adduced during discovery in this case.

Thank you for your attention to this matter, should you have any questions please feel free to contact the undersigned.

Very truly yours,

**BRILL & ASSOCIATES, P.C.**

By: /s/_____
Haydn J. Brill (HB3040)

HJB/cr

cc:
Nicoletti Gonson Spinner & Owen, LLP
Attn: Edward S. Benson, Esq. (Via ECF)

EXHIBIT A

# A. DAVID & ASSOCIATES, INC.

**190-13 LINDEN BOULEVARD  -  SAINT ALBANS, NY 11412**
PHONE (718) 276-4600 - FAX (718) 276-4605

July 7, 2004

Morstan General Agency, Inc.
1981 Marcus Avenue
Lake Success, NY   11042

Attention: Ms. Mickie Colon

Re:  Risk Inspection Report

Insured    : C.D. Kobson Inc.
Location   : 500 W. 28th St., New York, N.Y. 10001
Policy     : M5156187

Dear Ms. Colon:

        Please accept this as our Inspection Report relative to
the subject insured risk property.

        Included within this package are the following:

| X | NARRATIVE REPORT |
| X | RISK SURVEY DETAIL SHEET |
| X | PHOTOGRAPH(S) |

_____

_____  We have no recommendations to make at this time.
  X     We offer the following "RECOMMENDATION(S)" for
        consideration.(See the appended "NARRATIVE REPORT").

        We thank you for this opportunity to assist.  If there
are any questions, please feel free to contact us.

                        Very truly yours,

                        *James Maxwell*

                        A. David & Associates, Inc.

UNI 00082

## NARRATIVE REPORT

### GENERAL INFORMATION:

The insured risk property is a four (4) story, brick, attached, mixed-use building.  There is one (1) mercantile unit and three (3) apartments.  The mercantile unit is leased as a deli with cooking.  The building measures approximately 20' x 40'.  There is a grade level extension that measures approximately 250 sq. ft.

### INTERIOR:

A walkthrough of the mercantile unit revealed no noteworthy defects or hazards.  There are recently inspected fire extinguishers in place.  The commercial cooking supplement is appended for your file.  The ceilings, walls and floors of the dwelling common area are structurally sound.  There is however a hole in the ceiling on the fourth floor.  The stairway is sturdy and the banister is securely in place.  There are battery-operated smoke detectors in the apartments and hard-wired smoke detectors in the common areas.  There are no window guards required at this time.  The basement is dry, however there are items stored haphazardly and too close to the utilities.

### EXTERIOR:

The building appears to be structurally sound.  The sidewalk in front of the building contains no noteworthy defects.

### RECOMMENDATIONS:

1.  Repair and paint the hole in the ceiling on the fourth floor.
2.  Organize the items in the basement to allow for free passage and unobstructed access to the utilities and meters.

Disclaimer:  This report intends to provide insurance underwriting information based upon observations and interviews conducted as apart of our inspection efforts.  We do not assume any legal liability for misinformation inaccurate depictions or human error that may result in the dissemination of data that is errant or not inclusive of pertinent information.

UNI 00083

# A. David & Associates, Inc.

**RISK SURVEY REPORT**

DATE RECEIVED: 6/15/04
INSPECTION DATE: 6/23/04

AGENCY: Moustan
TYPE OF COVERAGE: _____

INSURED/RISK: C.D. Kasson Inc. c/o Diana Gamtas Kvi

LOCATION INSPECTED: 500 W 25th St NY NY 10001

DESCRIPTION OF PROPERTY: 4 Stony Apt Building 1Deli

## BUSINESS:

LINE OF BUSINESS: Blly Owner
TRADE NAME: N/A
HOW LONG IN BUSINESS: 23 yrs
AT THIS LOCATION: 23 yrs
INCORPORATED: Yes
HOURS OPEN: N/A
RECEIPTS: $ 4,400 monthly
VALUE OF STOCK/DATE: N/A
ADEQUATE INVENTORY RECORDS: N/A
STOCK IN BASEMENT: N/A
ANY JUDGEMENTS: no
APPEARS PROFITABLE(Y/N): Yes
MORAL HAZARD(Y/N): No
WRITTEN LEASE: Yes
NO. EMPLOYEES: 1

## PREMISES / NEIGHBORHOOD:

INSURED OWNED: Yes
AGE OF BUILDING: 75+
CONSTRUCTION : Brick
NO. STORIES : 4
OTHER TENANTS: Yes
ROOF/AGE: Rubber/3 ms
HEATING/AGE: Gas/10 yrs
BASEMENT: Yes
STATUS OF NEIGHBORHOOD: Re)Comm
BLDG VACANCIES: No
NEIGHBORHOOD VACANCIES: No
SUITABILITY OF INSURED
BUSINESS TO AREA: Good
FIRE ESCAPES: Yes
BASEMENT-SIDEWALK DOORS: Yes

## MISCELLANEOUS:

SPRINKLERS: No
EXTINGUISHERS : Yes
HOSES/SMOKE DET.: no yes
SAND OR WATER BUCKET: no no
BLDG. IN CITY LIMITS: Yes
WITHIN 500 FT. OF HYD.: Yes
DISTANCE TO FIRE STATION: 1/3 mile
VOLUNTEER OR PAID: Paid
ROOF DRAINAGE: Good
ROOF TANKS: No
BURGLAR ALARM: Yes
FIRE ALARM: No
OCCUPANCY ABOVE: No
ELEVATORS: No
ESCALATORS: No

## INSPECTION: (1=EXCELLENT; 2=GOOD; 3=AVERAGE; 4=POOR; N=NONE)

BUILDING CONDITION: 3
HOUSEKEEPING-INTERIOR: 3
HOUSEKEEPING-EXTERIOR: 3
ROOF CONDITION: 2
ROOF DRAINAGE: 2
FIRE HAZARDS: NO
FIRE HAZARDS IN BASEMENT: NO
PLUMBING CONDITION: 2
ELECTRIC CONDITION: 2
FLOOD EXPOSURE: NO

SIDEWALKS: 3
FENCING: NO
PARKING LOT: NO
EXTERIOR STAIRCASES: NO
EXTERIOR LIGHTING: 3
EXTERIOR SIGNS: 2
SECURITY GATES: 2
AWNINGS/SHUTTERS: 2 lns
GLASS: 2
WATER EXPOSURE TO STOCK: NO

INTERIOR FLOORS: 2
INTERIOR STAIRS: 2
INTERIOR LIGHTING: 2
INTERIOR TRIPPING HAZARDS: NO
INTERIOR UPKEEP: 2
STOCK ON SHELVES: N/A
EVIDENCE OF WATER LEAKS: NO
EXITS MARKED/LIT: Yes/yes
ESCALATOR CONDITION: NO
ELEVATORS CONDITION: No

PAST FIRES: N

PREVIOUS WATER DAMAGE: N

PAST LIABILITY CLAIMS: N

OPINION OF RISK: ✓ GOOD _____ FAIR _____ POOR ✓ SEE RECOMMENDATIONS





*A. David & Associates, Inc.*

TEL. (718) 276-4600
FAX: (718) 276-4605

190-13 LINDEN BOULEVARD
SAINT ALBANS, NEW YORK 11412

CASE CAPTION ___ CD Kupson Inc 500 W 28th St ny ny ___ D/O: ___

DATE PHOTOS TAKEN
6/25/04

PHOTO NO. 1

DESCRIPTION View

OF THE INSURED

RISK PREMISES

FOUR STORY APT BLDG



PHOTO NO. 2

DESCRIPTION View

OF THE SIDEWALK






UNI 00085




CD Kobsen



Photo : 3

View of the
interior greater
level hallway
e stairway

Photo : 4

View of the
4th floor

UNI 00086

CD Keeson



hot urs

View of

The Roof



Photo # 6

View of

The Grocery

Store From

To Back

UNI 00087

CD Kobson

Photo: 7

View of

the Cooking

Area



Photo: 5

View of

the Basement



UNI 00088

# A. DAVID & ASSOCIATES, iNC

## RISK REPORT — COMMERCIAL COOKING SUPPLEMENT

INSURED: _C D Kursor Inc D/B/A Diwaa Cam trakui_

ADDRESS: _500 W 14th st N3 n3_

|  | | YES | NO |
|---|---|---|---|
| 01.) | DOES THE INSURED OPERATE THE COMMERCIAL COOKING SECTION? | ___ | ✓ |
|  | IF NO, WHO DOES? _Lease the gram_ | | |
| 02.) | RESTAURANT HOURS: _70am    7am 7pm_ | | |
| 03.) | ALCOHOLIC BEVERAGES SOLD? | ✓ | ___ |
| 04.) | SEATING CAPACITY: _35_ | | |
| 05.) | ENTERTAINMENT: _none_ | | |
| 06.) | PATRONAGE:  AGE: _____   FINANCIAL _____ | | |
|  | SOCIAL: _Urban_ | | |
| 07.) | VOLUME OF COOKING (LIGHT-MEDIUM-HEAVY): _Light_ | | |
| 08.) | MAJORITY OF VOLUME FROM _75_ ✓ FOOD _25_ BEVERAGE | | |
| 09.) | DEEP FAT FRYERS (# _1_ ) | ✓ | ___ |
|  | A) THERMOSTAT CONTROLED | ✓ | ___ |
|  | B) AUTOMATIC HIGH TEMPERATURE CONTROLS | ✓ | ___ |
| 10.) | HOODS HAVE FIRE EXTINGUISHERS | ✓ | ___ |
|  | A) MANUFACTURER: _Kitchen Knight_ | | |
|  | B) TYPE:    CHEMICAL ✓    AUTO CO2 ___    OTHER. | | |
|  | C) LAST INSPECTION DATE: _6/04_ .  UNDER CONTRACT | ✓ | ___ |
|  | D) MANUAL ACTIVATION SWITCH PROVIDED AND ACCESSIBLE | ✓ | ___ |
|  | E) INTERLOCK FOR AUTO FUEL SHUT-OFF | ✓ | ___ |
|  | F) SURFACE NOZZLE PROTECTION OVER EQUIPMENT | ✓ | ___ |
|  | G) HOODS EQUIPED WITH NONREMOVABLE GREASE FILTERS | ✓ | ___ |
|  | H) HOOD WIRING CONDITION: _Good_ | | |
|  | I) HOOD LIGHTS IN VAPOR-PROOF GLOVES _Good_ | ✓ | ___ |
|  | J) FILTERS CLEANED EACH: _Daily BY the tenant_ | | |
|  | K) HOODS CLEANED EACH: _"   "   "  "_ | | |
|  | L) ADEQUATE CLEANING FOR EXPOSURE | ✓ | ___ |
|  | M) CLEANED BY WHOM? _Store employees_ | | |
|  | N) HOODS & DUCTS FREE OF EXCESSIVE GREASE | ✓ | ___ |
| 11.) | PORTABLE FIRE EXTINGUISHERS | ✓ | ___ |
|  | A) NUMBER _2_   B) DATE OF LAST INSPECTION _2/04_ | | |
| 12.) | METAL HOOD OVER ALL GREASE PRODUCING EQUIPMENT | ✓ | ___ |
| 13.) | EXHAUST FANS EXTEND THROUGH    WALL ✓   ROOF ___ | ✓ | ___ |
|  | A) MANUAL SHUT DOWN OF FANS | ✓ | ___ |
| 14.) | 18" CLEARANCE BETWEEN DUCTS & COMBUSTIBLE MATERIAL | ✓ | ___ |
| 15.) | DUCT CLEAN OUT TRAPS PROVIDED | ✓ | ___ |
| 16.) | REFRIGERATOR COMPRESSORS AT LEAST 2' FROM | | |
|  | COMBUSTIBLE MATERIALS | ✓ | ___ |
| 17.) | SOILED LINENS PLACED IN COVERED METAL CONTAINERS | | |
| 18.) | DISTANCE BETWEEN TRASH DUMPSTER & BUILDING _12 Ft_ | | |
|  | | | |
| 19.) | UNUSUAL HAZARDS | ✓ | ___ |
| 20.) | RECOMMENDATIONS FOR COOKING AREA | ✓ | ___ |

OVERALL EVALUATION  ✓ GOOD   ____ FAIR   ____ POOR

**UNI 00089**

EXHIBIT B

NOTICE OF CANCELLATION, NONRENEWAL, CONDITIONED RENEWAL OR CHANGE IN TERMS, CONDITIONS OR RATES

(New York)

| NAME AND ADDRESS OF INSURANCE COMPANY | United National Specialty Insurance Company<br>Three Bala Plaza, East Suite: 300<br>Bala Cynwyd PA 19004 | KIND OF POLICY: |
|---|---|---|
| | | Commercial Insurance Policy |

**ELECTRONICALLY ENTERED**
16 10/25/07

| POLICY/APPLICATION/BINDER NO.: M 5200158 | |
|---|---|
| EFFECTIVE DATE OF NOTICE: | |
| 11/27/07 (DATE) | 12:01 AM (HOUR-STANDARD TIME AT THE ADDRESS OF THE INSURED) |
| DATE OF MAILING: 10/25/07 | |

| NAME AND ADDRESS OF INSURED | C.D. Kobson Inc. c/o Diana Eamtrakul<br>212 West 122nd Street, Apt. 1<br>New York NY 10027 |
|---|---|

LHOHNOUNTO LM. Cm. of

| NAME AND ADDRESS OF AGENT | BROKER: |
|---|---|
| Morstan General Agency, Inc.<br>P.O. Box 4500<br>Manhasset NY 11030-4500 | Arco Insurance<br>68 Croft Lane<br>Smithtown NY 11787 |

*Under Law, applies to Fire or Fire and xtended overage olicies, Except /hen ancellation is ue to onpayment of remium)*

IF YOU HAVE ANY QUESTIONS IN REGARD TO THIS TERMINATION, PLEASE CONTACT THIS COMPANY'S REPRESENTATIVE AT (company phone number, name of company representative, company address):  Marcia Clapman (516) 488-4747  Ext. 3246

Morstan General Agency, Inc. P.O. Box 4500 Manhasset NY 11030-4500

THE NEW YORK INSURANCE LAW PROHIBITS INSURERS FROM ENGAGING IN REDLINING PRACTICES BASED UPON GEOGRAPHIC LOCATION OF THE RISK OR THE PRODUCER. IF YOU HAVE ANY REASON TO BELIEVE THAT WE HAVE ACTED IN VIOLATION OF SUCH LAW, YOU MAY FILE YOUR COMPLAINT WITH THE DEPARTMENT EITHER ON ITS WEBSITE AT WWW.INS.STATE.NY.US/COMPLHOW.HTM OR BY WRITING TO THE STATE OF NEW YORK INSURANCE DEPARTMENT, CONSUMER SERVICE BUREAU, AT EITHER 25 BEAVER STREET, NEW YORK, NEW YORK 10004-2319 OR ONE COMMERCE PLAZA, ALBANY, NEW YORK 12257.

ALSO SEE ADDITIONAL INFORMATION FOR INFORMATION ON PROCUREMENT OF INSURANCE
(Applicable item marked "X")

| ancellation | X ☐ | You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.<br>Reason(s) for cancellation. See statutory reason(s) designated by Code No(s). 5E_____contained in this notice. If Code No. 8 applies, note the procedure in the Code No. 8 item if you wish to have an Insurance Department review.<br>Reason(s)/Grounds for cancellation other than statutory reason(s) or, if required, supplementary to statutory reason(s) are given in the "Important Notices" section.<br>If cancellation is due to nonpayment of premium, the amount of premium due is _____<br>If cancellation is due to nonpayment of premium, payment of overdue premium to us, or your agent or broker will be considered timely if made within 15 days after the mailing of this notice. If payment is made, contact us or your agent or broker immediately.<br>See the "Important Notices" section in this form for "Information on Losses" and other information that may apply. |
|---|---|---|
| remium djustment | ☐<br>☐<br>☐<br>☐ | Unearned premium will be returned in accordance with New York law and the terms of the policy.<br>Enclosed is $_____, being the amount of return premium at pro rata for the unexpired term of this policy.<br>A bill for the premium earned to the time of cancellation will be forwarded in due course.<br>Other:_____ |
| onrenewal | ☐ | You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy will expire effective at and from the hour and date mentioned above and the policy will NOT be renewed for the specific reasons(s) stated in the "Important Notice" section.<br>See the "Important Notices" section for "Information on Losses" and other information that may apply. |
| onditioned enewal | ☐ | You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy, which will expire effective at and from the hour and date mentioned above, will be renewed, however, the renewal will be conditioned on one or more of the following changes being made in the renewal policy (such being a change of limits, change in type of coverage, reduction of coverage, increased deductible, addition of exclusion or increased premium(s) in excess of 10 percent, exclusive of any premium increases generated as a result of increased exposure units, pursuant to law or as a result of experience rating, loss rating, retrospective rating or audit, except with respect to an excess liability policy, renewal may also be conditioned upon requirements relating to underlying coverage): |

**UNI 00203**

Contact your agent, broker or this company if more specific pricing information is desired
See the "Important Notices" section in this form for specific reason(s) for conditioned renewal, "Information on Losses" and other information that may apply.

(Advance Notice of Nonrenewal or Change in Policy and Other Important Information Notices are contained on the following pages.)

IOTICE OF CANCELLATION, NONRENE    ., CONDITIONED RENEWAL OR CHAN    IN TERMS, CONDITIONS OR RATES

**(New York)**

| | |
|---|---|
| JAME AND . \ IDDRESS \ IF INSURANCE \ COMPANY | United National Specialty Insurance Company \ Three Bala Plaza, East Suite: 300 \ Bala Cynwyd PA 19004 |

| KIND OF POLICY: |
|---|
| Commercial Insurance Policy |
| POLICY/APPLICATION/BINDER NO.: .: M 5200158 |

| EFFECTIVE DATE OF NOTICE: | |
|---|---|
| 11/27/07 | 12:01 AM |
| (DATE) | (HOUR-STANDARD TIME AT THE ADDRESS OF THE INSURED) |
| DATE OF MAILING: 10/25/07 | |

| JAME AND . \ IDDRESS \ IF INSURED | C.D. Kobson Inc. c/o Diana Eamtrakul \ 212 West 122nd Street, Apt. 1 \ New York NY 10027 |
|---|---|

| NAME AND ADDRESS OF AGENT | BROKER: |
|---|---|
| Morstan General Agency, Inc. | Arco Insurance |
| P.O. Box 4500 | 68 Croft Lane |
| Manhasset NY 11030-4500 | Smithtown NY 11787 |

**Advance \ Notice of \ Nonrenewal \ or Change on \ Policy**

☐  You are hereby advised in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that it is our intention either not to renew the above mentioned policy, expiring on the date indicated above, or not to renew it with the same terms, conditions and/or rates now applying to your current policy. A second notice will be sent to you at a later date advising of either nonrenewal or conditional renewal of your policy and indicating that coverage will continue on the same terms, conditions and rates as the expiring policy until the later of the expiration date or 60 days after the second notice is mailed or delivered to you, except to the extent that, prior thereto, you have replaced your coverage or have elected to cancel your insurance, in which event such cancellation shall be on a pro rata premium basis.

See the "Important Notices" section in this form for "Information on Losses" and other additional information that may apply.

**Important \ Notices**

X☐   Reason(s) for cancellation, nonrenewal, conditioned renewal or change in policy:
Underwriting Reasons: Material Failure To Comply With Policy Terms, Conditions Or Contractual Duties (Unsafe Structural Exposure)

_____
_____
_____
_____
_____
_____
_____

☐   Additional Information, if any, applying to Cancellation, Nonrenewal, Conditioned Renewal, Changes in Policy Terms, Conditions or Rates:

_____
_____
_____
_____
_____

X☐  **Information on Losses:** Upon written request from you or your authorized agent or broker, we will mail or deliver loss information covering a period of years specified by the Superintendent of the Insurance Department by regulation or the period of time coverage has been provided by us, whichever is less, within 10 days of such request. Loss information consists of information on closed claims, open claims and notices of occurrences, including date and description of occurrence and any payments or amounts of any payments.

☐  **Consumer Report:** In compliance with the Fair Credit Reporting Act (Public Law 91-508) and the Consumer Credit Reform Act of 1996, you are hereby informed that the action taken above is being taken wholly or partly because of information contained in a consumer report from the following consumer reporting agency:

(Name)_____(Phone Number)_____

(Address)_____
Please see the additional information regarding the Consumer Credit Reform Act for a disclosure of your rights under this federal law.

☐  **Procurement of Replacement Property (Fire) Insurance:** This cancellation or nonrenewal pertains to a policy providing fire, and possibly extended coverage, vandalism and malicious mischief, sprinkler leakage and/or time element insurance. If you wish to replace your policy, you should make an effort to obtain insurance through another company in the voluntary market. If you have difficulty procuring replacement coverage in the voluntary market, you possibly may obtain such coverage through the New York Property Insurance Underwriting Association (the Association). If more information is needed about coverage through the Association, you may contact the Association directly at: New York Property Insurance Underwriting Association, 100 William Street, New York, New York 10038, Telephone (212) 208-9700 or through their website at www.nypiua.com.

If you have questions regarding this notice of cancellation, nonrenewal, conditioned renewal, substitute policy or change in policy limits/coverage please contact:

_____
(Company representative's name and telephone number)

_____
(Also see important information on the following page.)

E)GU 323k (Ed. 8-06) UNIFORM                    INSURED'S COPY                                                  Page 2 of 3

**UNI 00204**

TICE OF CANCELLATION, NONRENE_, CONDITIONED RENEWAL OR CHAN_ IN TERMS, CONDITIONS OR RATES
(New York)

| | | | |
|---|---|---|---|
| ME AND .<br>DRESS<br>INSURANCE<br>MPANY | United National Specialty Insurance Company<br>Three Bala Plaza, East Suite: 300<br>Bala Cynwyd PA 19004 | KIND OF POLICY:<br>Commercial Insurance Policy | |

| POLICY/APPLICATION/BINDER NO.: .: M 5200158 | |
|---|---|
| EFFECTIVE DATE OF NOTICE: | |
| 11/27/07<br>(DATE) | 12:01 AM<br>(HOUR-STANDARD TIME AT THE ADDRESS OF THE INSURED) |
| DATE OF MAILING: 10/25/07 | |

| | | |
|---|---|---|
| ME AND .<br>DRESS<br>INSURED | C.D. Kobson Inc. c/o Diana Eamtrakul<br>212 West 122nd Street, Apt. 1<br>New York NY 10027 | |

| NAME AND ADDRESS OF AGENT | BROKER: |
|---|---|
| Morstan General Agency, Inc. | Arco Insurance |
| P.O. Box 4500 | 68 Croft Lane |
| Manhasset NY 11030-4500 | Smithtown NY 11787 |

## REASONS FOR CANCELLATION

icellation is based on one or more of the following which appear under Section 3426(c)(1), Section 3426(c)(3) and Section 3426(c)(4) on the New York Insurance Law.:

Je
. **Section 3426(c)(1)**

(A)  nonpayment of premium provided however, that a notice of cancellation on this ground shall inform the insured of the amount due.

(B)  conviction of a crime arising out of acts increasing the hazard insured against;

(C)  discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim thereunder;

(D)  after issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

(E)  material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, which results in the property becoming uninsurable in accordance with the insurer's objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

(F)  a determination by the superintendent that continuation of the present premium volume of the insurer would jeopardize that insurer's solvency or be hazardous to the interests of policyholders of the insurer, its creditors or the public;

(G)  a determination by the superintendent that the continuation of the policy would violate, or would place the insurer in violation of, any provision of the Insurance Law (Chapter 28).

(H)  the insurer has reason to believe, in good faith and with sufficient cause, that there is a probable risk or danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds, provided, however, that:

(i)   the insured must act within ten days if review by the Insurance Department of the ground for cancellation is desired pursuant to item (iii) of this subparagraph (H); and

(ii)  notice of cancellation on this ground shall be provided simultaneously by the insurer to the Insurance Department; and

(iii) upon written request of the insured made to the Insurance Department within ten days from the insured's receipt of notice of cancellation on this ground, the Insurance Department shall undertake a review of the ground for cancellation to determine whether or not the insurer has satisfied the criteria for cancellation specified in this subparagraph; if after such review the Insurance Department finds no sufficient cause for cancellation on this ground, the notice of cancellation on this ground shall be deemed null and void.

**Section 3426(c)(3)**

. With respect to professional liability insurance policies, in addition to the bases for cancellation set forth above in Code Nos. 1 through 8, there has been revocation or suspension of the insured's license to practice his or her profession, or if the insured is a hospital, it no longer possesses a valid operating certificate under Section 2801-a of the public health law.

**Section 3426(c)(4)**

. With respect to an excess liability policy, in addition to the bases for cancellation set forth above in Code Nos. 1 through 8, there has been cancellation of one or more of the underlying policies providing primary or intermediate coverage, where: (a) such cancellation is based upon Code Items 1 through 8 or 9; and (b) such policies are not replaced without lapse.

**dditional Information regarding your rights under the Consumer Credit Reform Act**

ırsuant to the **Consumer Credit Reform Act of 1996, effective September 30, 1997,** you are informed that:

e consumer reporting agency identified on this form did not make any decisions regarding the stated insurance policy. Therefore, the consumer reporting ency would not be able to provide you with the specific reasons why the insurance company is taking the present action.

ju have the right to obtain within 60 days of the receipt of this notice a free copy of your credit report from the consumer reporting agency which has been entified on this form. (Prior to September 30, 1997, you have the right to obtain a free copy of your credit report within 30 days of the receipt of this notice.)

ju have the right to dispute inaccurate information by contacting the consumer reporting agency directly. Once you have directly notified the consumer porting agency of your dispute, the agency must, within a reasonable period of time reinvestigate and record the current status of the disputed information. If ter reinvestigation, such information is found to be inaccurate or unverifiable, such information must be promptly deleted from your records. If the investigation does not resolve the dispute, you may file a brief statement setting forth the nature of the dispute with the consumer reporting agency. Your ed statement will then be included or summarized in any subsequent consumer report containing the information in question.

ır complete information regarding the Federal Consumer Credit Protection Law please refer to The Code of the Laws of the United States of America, Title i, Chapter 41, Subchapter III, (15 U.S.C. §1681 et seq.).

AUTHORIZED REPRESENTATIVE

EXHIBIT C



EXHIBIT

CHAUDHRI

17

3/26/08 + M

## Dubinsky Consulting Engineers. PC

DESIGN, DEVELOPMENT, INSPECTION, PROPERTY EVALUATION
45 West 34ᵗʰ Street,  Tel. 212.594.1153
New York, NY 10001  Fax. 212.594.9376

# INSPECTION REPORT NO: 08-02-05

**PREMISES:** 311 10ᵗʰ Avenue, NYC

aka 500 West 28ᵗʰ Street, NYC

**Block No.** 699
**Lot No.** 37

*DATE:* September 7, 2005

**Premises:** 311 10th Avenue, NYC
AKA 500 West 28th Street, NYC

**Block No.** 699
**Lot No.** 37

**Building Description:** 4 story with basement and store front on 10th Avenue, NYC

**Date:** September 7, 2005

As requested, Dubinsky Consulting Engineers, PC, performed the inspection of existing four stories residential building with first floor commercial space.

The structure of the building consists of:

A. Foundations and foundation walls made of concrete and stone with brick bearing piers.

B. First floor wood floor is supported by wood joists and steel beams.

C. Upper levels and roof wood deck consist of wood flooring on top of 3" x 8" wood joists located at 16" +/- on center.

The masonry South wall of the building is covered with waterproofing stucco (see photo # 2) and revealed numerous cracks, holes and missing bricks (see photos ## 7 and 8). The expansion joint between adjacent loading dock and the building was in poor condition and two buildings are bound together at the stair level which caused cracks above (see photo # 7).

The South wall, which a bearing wall, is bulging out above street level and unless corrective measures are taken, it could farther deteriorate and collapse.

Inspection and examination of the basement revealed major cracks and missing section of the masonry bearing piers supporting front masonry wall as well as a portion of the sidewalk (see photos ## 9, 10, 11, 12 and 13).

Its dangerous condition is evident since that crack is over 1" wide and a (kitchen knife inserted in the crack can be seen see photo # 12).

Sections of the masonry piers are missing and repairs made in the past are inadequate and showing signs of deterioration.

These masonry piers support steel beams and stress cracks are evident under them (see photos ## 9 and 10). The conditions of the piers supporting steel beams is dangerous and immediate remedial work is required.

The bearing wall at the North revealed numerous diagonal and horizontal cracks as well as damaged stone windowsills and lintels. There is clearly evidence that leakages thru the walls aggravated these conditions and major repairs are required (see photos #: 3, 4, 5 and 6).

The interior wood stair between floors is warping and leaning away from the exterior wall (see photos ## 15 and 16). Stair landing and hallways are sloping to the center of the building. In some locations the slope was more than 2" (see photo # 21) and floor inside the apartments was raised to keep it leveled. This is a typical condition where floor level in the apartment is higher than the hallway.

Photos ## 20, 22 and 26 shows conditions where doors are not closing properly due to crocked and distorted doorframe related to the sloped floor. In addition to the hallway sloping floor (North-South direction), the floors are sloping in East-West direction too, towards the bathrooms at each apartment. The bathrooms are located at the middle of the building and due to numerous leaks in the past intermediate bearing wood partition and deteriorated as well as some of the floor joists.

These deflections are dangerous (weight of concrete mud and ceramic tiles is concentrated in this area) and if not addressed properly could farther deteriorate and cause a collapse of the middle portions of the floors.

Photos #: 17 and 18 shows deflected ceiling as well as cracks in the walls, Photos #: 27 and 28 indicate cracks in the ceiling due to leakages and deflections.

Photos #: 29, 30, 31 and 32 of the roof indicate the parapet which is not as required by code, which is of 3'-6" height for roof with access to public.

There also is a metal scrap yard on the West side less than 100' from the buildings and the equipment used there (the crane, the crashers etc...) create vibrations and induces more cracks and deterioration to the building.

In addition to the above there are many areas with old led paint which is hazardous to health and which it's removal requires a major undertaking and complete absence evacuation of the tenants in the building.

**Conclusions:**

The repairs of the building are absolutely necessary and all precaution must be taken ASAP to prevent dangerous conditions and possible collapse.

Due to the amount of repairs, associated cost and due to the length of time it will take to perform this task, we will recommend two options:

Option I

- Remove all tenants from the building, demolish the structure and build new building according to NY City Code and Zoning requirements.

Option II

- Remove all tenants from the building and replace most of the floor decks and floor joists.
- Replace all plumbing and electrical wiring.
- Repair and rebuild masonry walls (as required)
- Scrape and remove led paint as regulated by NY City Building Code.

Regardless which option will be accepted the vacation of the building is required ASAP since there is no guarantee how long the existing structure can hold up in the present condition.

If you have any questions regarding this matter please do not hesitate to contact our office for further assistance

Very truly yours:

Eli R. Dubinsky, PE

EXHIBIT D

# Dubinsky Consulting Engineers. PC

DESIGN, DEVELOPMENT, INSPECTION, PROPERTY EVALUATION

45 West 34ᵗʰ Street,
New York, NY 10001
Tel.: (212) 594-1153
Fax.: (212) 594-9376



**EXHIBIT**
CHAUDHAI
/3
3/26/09 1/6

February 26, 2007

Mr. Christopher M. Santulli, Commissioner
New York City Department of Building
280 Broadway, 3ʳᵈ Floor
New York, NY 10007

## Re: 311 Tenth Avenue, New York, N.Y. 10001 (South West Corner of 28ᵗʰ Street, New York, N.Y.) Block #: 699 & Lot #: 37 - Summary of Inspections, Monitoring and Conclusion Report

Dear Mr. Santulli

On October 18 2006, we sent you **a letter to Commissioner Patricia J. Lancaster summarizing** the developing problems with this building. Our initial report was issued to Ms. Laura V.Osario, Borough Commissioner and we raised concerns with the conditions of the building.

Sagging floors and floor joists, warping staircase, staircase and numerous cracks at the walls.

The owner was advised to monitor the building by installation tell tale tapes and monitor them on continuous basis. Your inspector promised that a copy of their findings would be issued to the owner of the building. "This has never been done", **neither she or I receive the copy of Department of Building report.**

We are very concerned that additional vibrations and lateral impact from the new site to be developed on the South side (A new Mid-rise apartment building is being contemplated), will cause farther vibrations and adversely impact the building.

The floors deflections are more than 3" in certain locations and this is another reason to be concerned.

In our opinion even if repairs are feasible, it will take longtime and will be very extensive. It will be an irresponsible and hasty act to let the tenant stay in, while such an operation take place.

We believe therefore that a vacant order must be issued as soon **as possible.**

Re: 311 Tenth Avenue, New York, N.Y. 10001 (South West Corner of 28th Street, New York, N.Y.)
    Block #: 699 & Lot #: 37 - Summary of Inspections, Monitoring and Conclusion Report.
    February 26, 2007
    Page    2

We monitor the building for the last year and found various movements reflected in the reading of the tell tale devices. The reversible movement could be explained by the vibration effecting this building due to the equipment operating on the West side of the building possible so major repair/replacement could be commence to safeguard the structure.

Enclosed all previous correspondences.

Very truly yours

Eli R. Dubinsky, PE
6Ps. enclosed copies or the Tell tale reading week:    44    to week: **02/20/2007**
A copy of our report Inspection Report No. 08-02-05 Date 09-07-05 a letter to Commissioner Lancaster October 18, 2006.

EXHIBIT E

**Naweed Chaudhri**

| | |
|---|---|
| **From:** | Timothy Lynch |
| **Sent:** | Tuesday, September 04, 2007 12:55 PM |
| **To:** | Naweed Chaudhri |
| **Subject:** | FW: 311 10th Ave, NY NY- preliminary report - FEU audit |
| **Attachments:** | DOC070321.pdf |

**Timothy D. Lynch, P.E.**
Principal Engineer

Forensic Engineering Unit
NYC Department of Buildings
280 Broadway, 7th Floor
New York, NY 10007
Phone: 212-566-3398
Fax: 212-566-3848
TimothyL@buildings.nyc.gov

CONFIDENTIALITY NOTICE: This email communication and any files transmitted with it contain privileged and confidential information from New York City Department of Building Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**From:** Thomas Connors
**Sent:** Wednesday, May 23, 2007 7:52 AM
**To:** Timothy Lynch (DOB); Max Lee
**Cc:** Paula Odellas
**Subject:** FW: 311 10th Ave, NY NY- preliminary report - FEU audit

**From:** Timothy Lynch (DOB)
**Sent:** Wednesday, March 21, 2007 2:16 PM
**To:** Dan Eschenasy
**Cc:** Timothy Lynch (DOB); Thomas Connors; Dennis Zambotti; Max Lee
**Subject:** 311 10th Ave, NY NY- preliminary report - FEU audit

Per the Departments request, I visited 311 10th Ave today to review the structural condition of the building. Our preliminary comments are as follows:
311 10th Ave, dating from the 1890's, is a free standing corner lot four story walk up tenement building comprising wood joist with brick bearing walls. The building is fully occupied with a convienience store on ground floor and cellar, and two apartments per floor on 2nd, 3rd and 4th. We observed the building to be in moderate structural condition consistant with its construction, age and more importantly, years of deferred maintainance. The exterior walls: running bond pressed brick on the 28th St and 10th Ave sides, and cross bonded common brick for the

other two sides, require routine repointing with localised reconstruction at the brownstone lintels (some have been changed already). Generally, the cellar and exterior walls were observed to be both plumb and structurally sound. The floors were observed to be aggressively deflected around the stairwell and this is consistant with the historical use of underside wood joists which deflect and transfer their loads onto the hall way walls, known as "semi loadbearing" releiving wall. The deflections appear to be in the range of 4" and this usually indicates to us that there is a line of releiving walls missing somewhere down on the lower floors. Observations in the retail Ground Floor store indeed confirm that there is no line of columns or partition walls at this level. Therefore the upper floors all stack up onto the 2nd Floor. Refer to FEU Sk 1 03.21.07 which illustrates this condition. This is very common.
Preliminary conclusions: Building structure is stable. Needs repair.

The owners engineer, Eli Dubinsky, comes to a different conclusion to our observations. I will speak to Mr Dubinsky to figure out what he may know that we don't know. Will report back on this.
Timothy D. Lynch, P.E.
Principal Engineer

Forensic Engineering Unit
NYC Department of Buildings
280 Broadway, 7th Floor
New York, NY 10007
Phone: 212-566-3398
Fax: 212-566-3848
TimothyL@buildings.nyc.gov

CONFIDENTIALITY NOTICE: This electronic message is intended to be viewed only by the individual or entity to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this communication is strictly prohibited without our prior permission. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies of it from your computer system.

EXHIBIT F



NYC Department of Buildings
280 Broadway, New York, NY 10007

Patricia J. Lancaster, FAIA, Commissioner

Naweed A. Chaudhri, P.E.
Principal Engineer
Forensic Engineering Unit

280 Broadway, 7th Floor
New York, NY 10007
Naweedc@buildings.nyc.gov

Date: September 14, 2007

RE: 311 10th Avenue, New York, NY.
AKA 500 West 28 Street.
Block No., 699, Lot 37

**Background:** In response to a request from Manhattan Borough Commissioner's office, I had visited the building on the morning of Wednesday September 05, 2007. Manhattan Borough Inspector Pugach had accompanied me during the visit. The purpose of this visit was to inspect this occupied buildings to determine whether the building is in danger of immediate collapse or shall continue to remain occupied. The building owner through his engineer Dubinsky Engineers has repeatedly asked DOB to order vacate for the entire building, on the basis of his engineering report dated September 7, 2005. Between January 2006 and the present date, the building has been inspected on several occasions either by DOB professional engineers or inspectors and none had identified need for vacating the building. The dates of some of the previous inspections by DOB along with names who had inspected are given below:

January 4, 2006 – Manhattan Borough Inspector. Angel Aviles.
February 16, 2006 – Manhattan Borough Plan Examiner, Faisal Muhammad. PE.
December 6, 2006 – Manhattan Borough Inspector, A. Athias
March 21, 2007- Forensic Engineer Timothy Lynch, PE.

**Introduction:** 311 10th Ave.. is a free standing, corner building located at South-~~East~~ West corner of intersection of 10th Ave., and West 28 Street. See figure -1 for Block, Lot diagram. The lot size is 24.67 x 100 feet. This is a four story plus a cellar walk up, constructed with brick exterior walls and wood frame floors. The building is approximately 100 years old (see picture No. 1).

Exp-1(front) is along 10th Ave.
On Exposure -2 side (South side), there is a vacant lot, where a building was demolished a few moths ago.
Exp-3 of the building has a one storey extension. 15ft Long x 10ft high x entire building width.
Exp- 4 exterior wall is along West 28 Street.
First floor is occupied by a Deli. The first floor has 15 ft long one story brick extension at back, presently used as deli's kitchen, restroom and storage area.

The cellar is being used as storage space by the Deli. At front, a sidewalk vault, four feet long x entire width of the building is present. Crawl space is provided beneath one story extension at back. Second through fourth floors have two apartments each. The apartments are numbered as 2F, 2R, 3F, 3R and 4F and 4R. Apartment numbers starting with prefix "F" are located at front of the building. The street level access to the stairs for the apartments is provided from West 28 Street side.

The cellar, first floor, all hallways, apartment 2R, roof and building exterior was inspected. Access to other five apartments was not available. Crack monitors seen installed at several locations in the cellar and in the superstructure. No date was noted over the crack monitors, but, according to Engineer Dubinsky's repot, the crack monitors were installed on March 7, 2006, on DOB instructions.,

**Findings:**

A- Exterior Inspection:
Exposure -1(Front Wall): Masonry has step cracks between second and third floor North windows (see picture No. 2) and above South fourth floor window.

Exposure -2 (South) Exterior Wall: This wall appears in structurally acceptable condition, considering the building age. There is no noticeable leaning of this wall. Stucco is missing for 2ft x 2 ft area near roof level, located approximately 10 ft from the building front (see picture No. 3). The one story brick extension is in poor shape, but, not in danger of collapse. Lack of maintenance is evident.

Exposure -3 (Back) wall for the main building appears to be maintained in the recent past. Similarly, the back wall of one story extension shows peeled off paint, but, has no structural issues (see picture No. 4).

Exposure - 4 (North exterior wall along West 28 St.): The chimney shows bricks with loose joints above roof level (see picture No. 5). Brick masonry shows step cracks between third and fourth floor windows (See picture No. 6). The brown stone lintel above the fourth floor middle window shows deterioration and the window is out of rectangular shape (see picture No. 7). Rear half of this Exp-4 wall appears to be leaning approximately 3 inches at top, towards W 28 Street side.

B-Interior Inspection:
Cellar floor is made of concrete slab on grade. Cellar walls are constructed with rubble stone masonry. The front of the cellar is connected with a 4 ft long x full building width vault under the sidewalk. Access to the sidewalk vault is provided through openings between two 16 inch x 36 inch brick columns at Exposure -1. Each brick column supports one 5 inch diameter cast iron first floor column, which support brick façade above first floor. The 36 inch side of the brick column (the one South side of cellar front) shows a vertical crack, wider at top and propagating towards the cellar floor (see picture No., 8). The crack monitor (gage) shows a movement of 1-mm, which is minor considering its installation 18 months ago. The cellar roof (excluding sidewalk vault) is supported by wood planks over wood joists over steel beams supported by a line of pipe columns along the building length. A 3 inch x 4 inch header supporting front of the first floor is badly deteriorated and has lost its bearing in the Exp-2 Exterior wall (see picture-9). The Sidewalk vault roof is constructed with metal deck supported over steel beams, running in East - West direction. The vault roof appears to be newer than rest of the building (appears 20 years to 25 years old). DOB records do not show as to when the roof of the sidewalk vault was replaced. Also, upper one to two upper courses of rubble stone masonry of vault's front wall are loose/with out any mortar (see picture 10). It appears that the 16x36 inch brick cellar level column along with upper two courses of the exterior rubble wall were damaged during the vault roof replacement a few years ago.

Due to presence of hung ceiling above first floor, and false ceiling at upper floors, inspection of second to fourth floor framing could not be carried out. Inspection of single story extension (kitchen) at the back did not show any structural issues.

The building roof was examined and no structural abnormality was visible. The inner side of brick chimney was covered with bituminous coating, so masonry cracks were not visible from roof level. The parapet height at back of roof is approximately six inches.

The hallway at fourth floor showed a few cracks (3/16 inch wide) along Exp- 4 (North) exterior wall, but the crack monitor showed zero reading (see picture 11). Inspection of hallway at third floor showed a large vertical crack in the lath and plaster wall on left side of entrance door for apartment 3F and also similar cracks in the lath and plaster wall of apartment 3R (see picture No., 12). Cracks are also present in walls of the second floor hallway. Hallways floors at 2nd, 3rd and 4th floors appeared substantially sloped towards middle of the building (three to four inches approximately).

Inspection of apartment 2R from interior also reveled that its floor and roof is sloped approximately 4 inches towards its entrance door (towards middle of the building), similar to the sloping hallway floor. No cracks were visible at the junction of its East partition wall with ceiling or floor, which confirms that the issue of sloping of floors of apartments (mentioned in previous DOB's and Dubinsky's reports) has existed since long time. Interior wood stairs at all floors have separated (described as warped in Dubinsky's report) from the Exposure -4 west wall.

**Immediate Actions Taken:**

Based on the inspection findings, two ECB violations were issued to the building owner, C.D. Kobsons Inc., on June 5, 2007, ECB violation No., 34593549P was issued for failure to maintain exterior of the building. ECB violation No., 34593548N was issued for failure to maintain interior of the building, due to sagging floors, masonry cracks sidewalk vault beams not properly installed, deteriorated 3x4 wood headed at front of cellar ceiling, brick pillar at Exp-1 cracked. Remedy requires repair/replace and provide shoring of the first and second floors immedietely.

**Summary/Conclusion:**

1- The sloping floors due to excessive deflection of the floors (4 inch approximately near mid span) is due to absence of a line of intermediate wall or columns at the first floor retail area (see Figure-2 at end of this report).
2- The load bearing masonry walls are in moderate condition considering building age and depict lack for maintenance over a long period of time.
3- The chimney needs immediate repair.
4- The sagging floors due to excessively deflected floors is due to absence of a line of intermediate columns or relieving wall at the first floor level.
5- The latest crack monitoring report available in DOB records shows readings taken on August 9, 2007. The maximum movement recorded at that time is 2 mm. The cracks in the masonry and partition walls have appeared most likely due to excessive deflection of wood joists.
6- Sidewalk vault roof appears to be replaced with metal deck over new steel beams a few years ago, but, no records of filing or permit issuance are available. Brick column at front of cellar appears to be damaged due to shabby construction during installation of new beams for the side walk vault.
7- 16x36 inch Exp-1 brick column in the cellar needs immediate shoring, prior to its repair.

**Recommendations:**

1- The building owner must hire an engineer to design and provide shoring of the second floor tier and in the cellar and submit a structural stability report on completion of work. Before designing shoring, the owner's engineer must inspect and ensure that sufficient end bearings of the floor joists are available at all floors.

2- Vacate of the building is not required during installation of shoring. It is responsibility of building owner's engineer to ensure that the shoring is installed in a safe manner.

3- Building owner shall be advised to hire a professional surveyor and provide DOB with sealed and signed building leaning information for its all exterior walls.

4- There is immediate need for repair/maintenance of building's Exp-1(Front), Exp-2(South) and Exp-4 (North) exterior walls.  Repair of interior partition walls shall be carried out after completion of shoring of the second and first floor.

5- During my inspection of September 5, 2007, a maximum movement of one (1) mm was noticed at one of the gages. I have advised Mr. Dubinsky of Dubinsky Consulting engineers to submit the recent crack monitoring data for all of the installed crack monitors to FEU and Manhattan Borough office for review. Dubinsky has promised to provide the monitoring report with- in a week. FEU's recommendations made in this report may need modification, if excessive recent movement of any of the crack monitoring gage installed at a critical location is identified

6- The building is not in immediate danger of collapse, but, without providing needed shoring, excessive deflection of joists may lead to progressive building collapse after an unspecified period (either due to over-straining of wood fibers joists or joists sliding out of end bearings).