UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
C.D. KOBSONS, INC.,

                Plaintiff,

-against-

UNITED NATIONAL SPECIALTY
INSURANCE COMPANY,

                Defendant.
-------------------------------------------------------x

Civil Action No.: 07 CV 11034 (SAS)

**AFFIDAVIT OF PRISCILLA PRIESTMAN IN SUPPORT OF MOTION FOR <u>SUMMARY JUDGMENT</u>**

PRISCILLA K. PRIESTMAN, being duly sworn, deposes and says:

1. I am currently employed by Penn-America Group as an Assistant Vice-President in the underwriting department and have held that position since January 2006. From June 2004 to January 2006, I held a similar position with the United National Group. United National Specialty Insurance Company ("UNSIC") is one of the companies within the United National Group.

2. In my position at United National Group, and then at Penn-America Group, I have had responsibility for underwriting and supervising the underwriting of Morstan General Insurance Agency ("Morstan").

3. In the period from June 2004 up to and including October 2007, Morstan was an agent for United National Specialty Insurance Company ("UNSIC") and underwrote insurance on UNSIC's behalf.

4. Morstan underwriters were required to underwrite insurance policies in compliance with guidelines supplied by UNSIC. Copies of the pertinent guidelines are annexed as Exhibit "A".

5. Prior to the commencement of this litigation, I had no knowledge of the circumstances surrounding the underwriting of coverage for C.D. Kobsons, Inc. ("Kobsons") regarding premises at 500 West 28th Street, New York, NY, also known as 311 West 28th Street, New York, NY ("premises") by Morstan on UNSIC's behalf.

6. I have reviewed the affidavit of Migdalia ("Mickie") Colon ("Colon affidavit"), which includes copies of the numerous undisclosed violations (Exhibit "H" to the Colon affidavit) that were outstanding at the time that policy number M5200158, issued by UNSIC to Kobsons ("UNSIC policy"), was renewed in 2007.

7. While the outstanding violations and intent to demolish or significantly renovate were never disclosed by Kobsons, and the renewal application was never submitted to UNSIC for prior approval, I can confirm that if UNSIC had been asked to consider an application that contained the undisclosed information, under no circumstances would the UNSIC policy have been renewed.

8. UNSIC does not insure buildings, such as the premises, where they require renovation of a substantial or structural nature. This is reflected both in the prohibition against insuring "[t]he shoring....or wrecking of buildings or structures" and the practice adopted on submission of such risks. Simply put, UNSIC would always refuse to enter into an insurance contract where there are violations of the extent and type present on the premises.

9. In addition, if Kobsons had disclosed that it was contemplating structural alterations and demolition exposure since 2005, as is reflected in the excerpts from correspondence annexed as Exhibit "I" to the Colon affidavit, under no circumstances would the UNSIC policy have been renewed. Such activities are prohibited from coverage in the underwriting guidelines as relating to "[t]he shoring....or wrecking of buildings or structures." In addition, as noted

above, UNSIC would always refuse to enter into an insurance contract where renovation of a substantial or structural nature was required. Clearly that was the case with the premises.

10. On May 9, 2008, UNSIC issued a return premium check to Kobsons in the amount of $5,068.20, comprising a refund of the full premium. A copy of the check and accompanying letter is annexed as Exhibit "B".

*/s/ Priscilla K. Priestman*
PRISCILLA K. PRIESTMAN

Sworn to before me this 20th day of May, 2008

*/s/ Bruce Maxey*
Notary Public

Bruce Maxey IV
NOTARY PUBLIC -- ARIZONA
MARICOPA COUNTY
My Commission Expires
August 1, 2010

**EXHIBIT A**

# COMMERCIAL LIABILITY UNDERWRITING

## I. COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Maximum Limits**

| | |
|---|---|
| General Aggregate limit (other than Products/Completed Operations) | $ two times the each occurrence limit |
| Products/Completed Operations limit | $ same as each occurrence limit |
| Personal and advertising injury limit | $ same as each occurrence limit |
| Each occurrence limit | $ 1,000,000 |
| Fire damage limit | $ 50,000 any one fire |
| Medical expense limit | $ 5,000 any one person |

IMPORTANT NOTE: Please refer to Company with any questions after reviewing the classification section.

Aggregates per project can be considered. Please submit to Company for prior approval.

The Underwriter should follow the ISO minimum payroll rules for each state.

## II. DEDUCTIBLES

Minimums - The following minimum liability deductibles apply:

1. The minimum liability deductible is $250.

2. Where liability coverage is being provided solely for one or two family, tenant-occupied dwellings, the minimum deductible is $100.

**UNI 00239**

### III. MINIMUM PREMIUMS

Liability should be rated using the most current edition of the ISO loss cost, times the loss cost multiplier. For admitted business all applicable credits and debits should be properly documented.

Please use actual exposure base, but not less than the ISO minimum exposure bases.

The following minimum premiums shall apply to the general liability coverage part:

| | | | |
|---|---|---|---|
| $ 350 | for | $ 100,000 each occurrence | $ 200,000 general aggregate |
| $ 500 | for | $ 300,000 each occurrence | $ 600,000 general aggregate |
| $ 750 | for | $ 500,000 each occurrence | $ 1,000,000 general aggregate |
| $1250 | for | $1,000,000 each occurrence | $ 2,000,000 general aggregate |

NOTE: MINIMUM PREMIUMS APPLY REGARDLESS OF POLICY TERM EXCEPT ON ADMITTED PAPER WHERE APPROVED FILINGS WOULD BE VIOLATED.

### IV. PROPER CLASSIFICATION AND ADEQUATE EXPOSURE BASES

All accounts should be properly classified using the simplified "ISO" classification tables included in this manual.

The insured exposure should be verified by inspection and the policy should be IMMEDIATELY endorsed if the inspection report reveals any discrepancies.

If the classification is rated on area or other non-auditable bases, all chargeable area must be included using the ISO General Rules as a guide.

### V. ADDITIONAL INSUREDS

Additional Insureds may be included after careful consideration of their insurable interest. ISO or United National Additional Insured Endorsements are to be used. Use of any other Additional Insured Endorsements must be referred to the Company for prior approval and may require Department of Insurance approval when used in conjunction with admitted paper.

Follow ISO rating methodology for Additional Insureds.

### VI. CERTIFICATES OF INSURANCE

Only the Underwriter or the Company has authority to issue certificates of insurance. Certificates issued by the retail producer obligate the Underwriter to check each certificate for accuracy and to immediately correct any errors. A copy of all certificates must be sent to the Company.

**UNI 00240**

UNITED NATIONAL GROUP / Simplified Underwriting Guide
COMMERCIAL LIABILITY, CONTINUED

## VII. COVERAGE REDUCTION CREDITS

The use of the following coverage reduction credits are permitted when restricted coverage is issued on **non-admitted** paper. It is necessary to check actual filed rates when using **admitted** paper to determine approved filing credits.

**Coverage Reduction Credit Table**

| ISO Form Number | FORM TITLE | Percentage Credit |
|---|---|---|
| CG-2135 | Exclusion - Coverage C Medical Payments | 2% |
| CG-2137 | Exclusion - Employees as Insureds | 2% |
| CG-2138 (Cannot be used with CG-2140) | Exclusion - Personal and Advertising Injury | 4% |
| CG-2139 | Contractual Liability Limitation | 4% |
| CG-2140 (Cannot be used with CG-2138) | Exclusion - Advertising Liability | 2% |
| CG-2142 | Exclusion - Explosion, Collapse, Underground | 2% |
| CG-2145 | Exclusion - Fire Damage Legal Liability | 2% |
| SL-4 | Exclusion – Assualt and/or Battery | 4% |
| SL-31 | Exclusion – Lead | 4% |

These credits apply to all Premises/Operations classifications when deleting Fringe Coverages.

## VIII. PRIOR SUBMIT LIABILITY EXPOSURES

1. All liability risks that are undergoing extensive renovations.

UNI 00241

UNITED NATIONAL GROUP / Simplified Underwriting Guide
COMMERCIAL LIABILITY, CONTINUED

### PRIOR SUBMITS (continued)

2. Contracting/Service applicants with no prior experience.

3. Low income or subsidized habitational properties.

4. All short term events, such as Flea Markets, Flower Shows, Exhibitions, etc.

5. Accounts with gross sales or receipts in excess of $1,000,000.

6. Any account with more than one loss in the past two years or any one loss which exceeds $10,000.

7. Any account that has more than 30% of work performed by sub-contractors can be written using the special guidelines for General Contractors.

8. General contractors can be written or submitted as outlined in the special guidelines for this class.

9. Any account that has a potential exposure to assault and battery claims, specifically those operations that employ security personnel. Although these accounts may be submitted for consideration, they are discouraged.

10. Any account that develops a liability premium more than $15,000.

*HOT TIP: TAVERNS AND RESTAURANTS WITH ENTERTAINMENT GENERALLY HAVE AN ASSAULT & BATTERY EXPOSURE. TO AVOID UNNECESSARY CANCELLATION, PLEASE, MAKE SURE NO ENTERTAINMENT EXPOSURE EXISTS BEFORE QUOTING!*

### IX. PROHIBITED RISKS AND CLASSIFICATIONS

Prohibited classifications are shown in the Classification Tables of this manual. We do wish to emphasize, however, that the following classifications are specifically excluded:

1. Habitational Risks located in Texas.

2. California contractors involved in residential construction or repair including apartments and condominiums.

3. Risks currently in receivership, bankruptcy, have a history of bankruptcy, or are otherwise not financially sound are prohibited.

UNI 00242

UNITED NATIONAL GROUP / Simplified Underwriting Guide
COMMERCIAL LIABILITY, CONTINUED

**Prohibited Classifications** (continued)

4. Marine Protection and Indemnity (including operation, navigation or wrecking of any vessel or barge) exposures and Aviation exposures.

5. Railroad Protective Coverage or any operation of a carrier on rails.

6. Risks involved in the production, storage, or refining of petroleum and its products, except as respects retail gasoline service stations or garages. Included in this prohibition is the manufacture, production, refinement, storage, distribution, and transportation of flammable, explosive, or caustic materials (except some local retail delivery when prior written consent is granted by the Company). Drilling for oil or natural gas and the construction or operation of any pipeline for transmission of oil or gas is also prohibited.

7. Manufacture, ownership, maintenance, operation or use of aircraft, aircraft parts, and airports.

8. Commercial or Personal Umbrella Liability.

9. Malpractice, Errors and Omissions, and Professional Liability (except where prior written consent is granted by the Company).

10. Directors' and Officers' Liability (except where prior written approval is granted by the Company).

11. Public Utility Business

12. Storage, sale, handling, or distribution of any explosive, ammunition, magnesium, fuse, fireworks, celluloid or pyroxylin or risks with gas under pressure, including liquefied petroleum gas.

13. Operation of an amusement park or amusement rides, circus, carnival or race track.

14. The shoring, moving, or wrecking of buildings or structures.

15. Construction, maintenance or operation of canals, dry docks, coffer dams, dams, bridges exceeding 100 feet in length, or tunnels or subways exceeding 50 feet in length.

16. Underground coal or asbestos mining or subaqueous operation.

17. Any exposure under the Longshoremen and Harbor Workers' Compensation Act.

**UNI 00243**

# COMMERCIAL PROPERTY UNDERWRITING

## I. COVERAGES & CAUSES OF LOSS

The basic causes of loss may be provided for the following coverages:

a. Real Property
b. Personal Property
c. Business Income - this coverage should not be written without real and/or personal property coverages.

Broad or special causes of loss may be provided when wiring, plumbing, heating and roofing have all been updated within the last 15 years.

## II. THEFT GUIDELINES

When providing special causes of loss on contents that are high target items (ie: liquor stores, drug stores, household appliances, retail clothing, etc.), higher theft deductibles must be used. Additionally, we require that the risk have a central station burglar alarm. The Protective Safeguard Endorsement, warranting that such an alarm exists and is in good working order, must be attached to the policy. Our minimum theft deductible is $2,500 when covering high target items, however, higher theft deductibles are encouraged.

## III. WIND AND HAIL GUIDELINES

1. Exclude wind on all risks located in **Florida**. The exclusion must be signed by the insured/

2. Exclude wind on risks located within 25 miles of any major body of water (except inland lakes and waterways) in the **Gulf Coast States, a) Alabama, b) Georgia, c) Louisiana, d) Mississippi, e) North Carolina, f) South Carolina, g) Texas and h) Virginia.**

3. Exclude wind on risks located within one mile of any major body of water (except inland lakes and waterways) **all states North of Virginia.**

4. Texas Wind/Hail Guidelines:



IV.   MINIMUM Rates by Zone

|  | Habitational | | Commercial |
|---|---|---|---|
| Zone 1 | * | 1.05 | .80 |
| Zone 2 Tier 1 | ** | .65 | .50 |
| Zone 2 Tier 2 | *** | .94 | .79 |
| Zone 3 | * | .95 | .80 |
| Zone 4 |  | .80 | .65 |
| Zone 5 |  | .70 | .51 |
| Zone 6 |  | .68 | .50 |

\*     Rates include 1% wind and hail deductible required
\*\*    Rate includes credit for CP-1054 exclusion wind and hail, required
\*\*\*   Rates include 5% wind and hail deductible (required)

*HOT TIP: UNITED NATIONAL IS NOT A MARKET FOR CATASTROPHE COVERAGE!*

## V. PARTICIPATION

We prefer to write 100% of an account due to our ample capacity. In extenuating circumstances, you may prefer participation with other carriers. When participating on a property account, the Company's participation should represent a percentage of the entire account. When participating on any account, the forms, coverages, pricing, and effective dates used by all participating carriers MUST be concurrent.

We do not wish to participate on a property account that has been split in any other way such as real property being placed with one carrier and personal property being placed with another.

Participating carriers must have a proven track record of financial strength, Questionable carriers should be referred to the Company for approval before participation is considered.

*HOT TIP: CALL US BEFORE PARTICIPATING - WE HAVE MORE CAPACITY THAN YOU MAY THINK!*

## VI. DEDUCTIBLES

Minimums - The following minimum property deductibles apply:

1. For accounts where the total values do not exceed $50,000, the minimum deductible is $500,

2. For accounts where total values are $50,000 or higher, the minimum deductible is $1,000.

3. A minimum $2,500 deductible applies to theft on High Target Personal Property. Please refer to Theft Guidelines on page CP-1 for specifics. PLEASE NOTE: **The use of higher deductibles is encouraged.**

UNITED NATIONAL GROUP / Simplified Underwriting Guide
COMMERCIAL PROPERTY, CONTINUED

*HOT TIP: OUR IN-HOUSE PROPERTY CAPACITY EXCEEDS $5,000,000 AND ADDITIONAL CAPACITY IS AVAILABLE. GIVE US A CALL.*

## VII. MINIMUM PREMIUMS AND MINIMUM ACCOUNT RATE

1. Property should be rated using ISO loss cost times the loss cost multiplier. (See State Exception Page)
2. Multiply loss costs times loss cost conversion factor to obtain a rate.
3. In no event should the final account rate be less than $.30. (Exceptions may apply for those risks that have unique characteristics such as Fire Resistive Construction, Approved Sprinkler System, etc., but you are encouraged to consult with the company on these risks.

Our minimum annual policy premium for monoline property is $350 and $250 when written as part of a package including General Liability.

*(NOTE: OUR POLICY MINIMUM PREMIUM APPLIES, REGARDLESS OF POLICY TERM!)*

## VIII. ADEQUATE INSURANCE TO VALUE/COINSURANCE

Adequate insurance to value is a key factor in establishing a satisfactory price for the exposures written. The underwriter should be conscious of the average insurable values in any given area of the country to guard against under or over insurance.

Proper insurance to value is even more critical when writing property in a valued policy state.

All real and personal property should be written on an actual cash value basis with a minimum coinsurance of 80%.

Replacement Cost coverage may be considered on buildings in excess of 15 years of age, but in no cases will replacement cost coverage be considered unless the building has been properly updated and maintained, and improvements can be documented. The minimum coinsurance requirement for replacement cost coverage is 90%.

Replacement Cost should not be provided on Contents unless prior written approval is granted by the Company.

## IX. FINANCIAL CONDITION OF THE INSURED

An arson application may be required when the financial condition of the insured or applicant is questionable. The arson application must be signed by the Insured and the original must be forwarded to the Company. A sample copy of United National Group's Arson Application is included in this guide.

The following accounts are unacceptable for property coverage:

1. Any account where the insured is in bankruptcy.
2. Any account where the insured is in receivership.
3. Any account where the insured is not otherwise financially sound.

## X. PRIOR SUBMIT PROPERTY EXPOSURES

1. Any seasonal property risk.

2. Low income or subsidized habitational properties.

3. New ventures.

4. Any property risk which will be undergoing extensive renovations, particularly structural renovations.

5. Coastal properties - See specific wind and hail guidelines.

6. Any property account with a mortgagee that is other than a financial institution.

7. Properties in Protection Class 8, 9 or 10.

8. Any account with more than one property loss in excess of $10,000 in the past 3 years.

9. Policies written with no coinsurance, and/or on an agreed amount basis.

## XI. SPECIFIC PROHIBITED PROPERTY EXPOSURES:

1. Business classified as either Ocean Marine or Aviation, but the prohibition does not apply to permanently moored restaurants.

2. Growing and/or standing crops or timber.

3. Plate Glass, Fidelity, and Crime Insurance, unless written as part of a multiple peril policy.

4. Flood, Tidal Wave, Wave Wash, and Earthquake Insurance.

5. Difference in Conditions Coverages.

6. Bridges and Tunnels.

7. Livestock Mortality.

8. Railroad Properties.

9. Seasonal or Resort Frame Hotels with limits exceeding $200,000.

10. Production, storage, or refining of petroleum and its products, except retail gasoline service stations or garages.

11. Insurance that is part of any Pool, Syndicate, or Association.

EXHIBIT B

**United America Insurance Group**

Penn-America Group, Inc.
Penn-America Insurance Company
Penn-Star Insurance Company
Penn-Patriot Insurance Company

United National Group
United National Insurance Company
Diamond State Insurance Company
United National Specialty Insurance Company
United National Casualty Insurance Company

**Priscilla K. Priestman**
*Assistant Vice President*
*Underwriting — Northern Region*
P: 610.668.6933
F: 610.668.6962
priestman@penn-america.com

May 9, 2008

**Via Certified Mail-RRR**

Doungrat Eamtrakul
C.D. Kobsons, Inc.
212 West 122nd Street
Suite #1
New York, NY 10027

Re: C.D. Kobsons, Inc. v. United National Specialty Insurance Co.
    U.S. District Court, Southern District of New York
    Policy No. : M5200158

Dear Ms. Eamtrakul,

Pursuant to the contentions advanced by United National Specialty Insurance Company in the above-referenced litigation, please find enclosed a check for $5,068.22 being a refund of the full amount of premium paid for the above referenced policy.

Very truly yours,

*Priscilla K. Priestman*

Priscilla K. Priestman
Assistant Vice President – Underwriting
Northeast Region

| | | CHECK NUMBER | 0000025502 |
|---|---|---|---|
| United National Specialty Insurance Company | | CHECK DATE | 05/09/08 |
| DOUNGRAT EMATRAKUL<br>C.D. KOBSONS, INC.<br>NEW YORK, NY 10027 | | VENDOR CODE | EAMTRAKULDOUNGR |

| INVOICE DATE | INVC # / REFERENCE ID | DESCRIPTION | INVOICE AMOUNT |
|---|---|---|---|
| 05/09/08 | 5/9/08 EAMTRAKUL | | 5,068.20 |

CHECK NUMBER:      25502                                    TOTAL CHECK AMOUNT      $      5,068.20

---

THIS CHECK IS VOID WITHOUT A COLORED BACKGROUND AND AN ARTIFICIAL WATERMARK ON THE BACK – HOLD AT ANGLE TO VIEW

UnitedAmerica Insurance Group

United National Specialty Insurance Company
3 Bala Plaza East, Suite 300
Bala Cynwyd, PA 19004

PNC Bank, N.A.  020
Philadelphia PA
3-5/310

CHECK NUMBER
25502

CHECK DATE
05/09/08

NON-NEGOTIABLE AFTER 90 DAYS

PAY:   FIVE THOUSAND SIXTY-EIGHT DOLLARS & 20/100                    $******5,068.20

CHECKS OVER $10,000 REQUIRE TWO SIGNATURES

TO THE ORDER OF:

DOUNGRAT EMATRAKUL
C.D. KOBSONS, INC.
212 WEST 122ND STREET, STE #1
NEW YORK, NY 10027

⑆000002550 2⑆ ⑇031000053⑇ 85305950 28⑆