UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

C.D. KOBSONS, INC.,                    :     Civil Action No.: 07 CV 11034 (SAS)
                                       :
                         Plaintiff,    :
     -against-                         :
                                       :
UNITED NATIONAL SPECIALTY             :
INSURANCE COMPANY,                    :
                                       :
                        Defendant.     :

----------------------------------------------------x

# *Memorandum Of Law*

Nicoletti Gonson Spinner & Owen LLP
Attorneys for Defendant
United National Specialty Insurance Company
555 Fifth Avenue, 8th Floor
New York, New York 10017
(212) 730-7750

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………...…………………………………………...........ii

PRELIMINARY STATEMENT………………………………………………………..1

FACTUAL BACKGROUND….……………………………………………………..2

    The Insurance and Renewal of the UNSIC Policy………………………………..2

    The Emergency Declaration…………………………………………………………4

    Cancellation of the UNSIC Policy…………………………………………………...5

    Premises' History of Violations…………………………………………………...6

    Kobsons' Lawsuit……………………………………………………………………8

ARGUMENT

POINT I

The Standard For Summary Judgment…………………………………………….9

POINT II

The UNSIC Policy Was Validly Cancelled...........................................………………..11

POINT III

Kobson's Material Non-Disclosure Of Numerous Violations And Its Intention To
Demolish Entitles UNSIC To Rescind Its Policy…………………………………...16

POINT IV

The Circumstances Of The Case At Bar Do Not Present An Election Of
Remedies Situation…………………………………………………………………..20

CONCLUSION..............................................................................................................24

i

**Table of Authorities**

**Cases**

Allen v. Coughlin, 64 F.3d 77 (2d Cir. 1995)............................................................................. 10

Allen v. Westpoint-Pepperell, Inc., 11 F.Supp.2d 277 (S.D.N.Y. 1997)...................................... 23

Baratta v. Kozlowski, 94 A.D.2d 454, 464 N.Y.S.2d 803 (2d Dept. 1983) ................................ 23

Bleecker Street Health & Beauty Aids, Inc. v. Granite State Ins. Co., 38 A.D.3d 231, 834
        N.Y.S.2d 1 (1st Dept. 2007) ............................................................................................. 18, 19

Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .......... 9, 10

Chicago Ins. Co. v. Halcond, 49 F.Supp.2d 312 (S.D.N.Y. 1999) ................................................ 17

Christiania General Ins. Corp. v. Great Am. Ins. Co., 979 F.2d 268 (2d Cir. 1992). ................... 16

Eastern District Piece Dye Works, Inc. v. The Traveler Insurance Co., 234 N.Y. 441, 138 N.E.
        401 (1923)............................................................................................................................. 16

Geer v. Union Mut. Life Ins. Co., 273 N.Y. 261, 7 N.E.2d 125 (1937) .................................. 16, 17

Gulf Ins. Co. v. Transatlantic Reinsurance Co., 13 A.D.3d 278, 788 N.Y.S.2d 44
        (1st Dept. 2004) ........................................................................................................................ 23

INA Underwriters Ins. Co. v. D.H. Forde & Co., P.C., 630 F.Supp. 76 (W.D.N.Y. 1985); ........ 16

Kantor v. Nationwide Life Ins. Co., 16 A.D.2d 701, 227 N.Y.S.2d 703 (2d Dept. 1962) ........... 16

Kulikowski v. Roslyn Savings Bank, 121 A.D. 2d 603, 503 N.Y.S.2d 863 (2d Dept. 1986) ...... 16

Mutual Ben. Life Ins. Co. v. JMR Electronics Corp., 848 F.2d 30 (2d Cir.1988)........................ 18

Nationwide Mut. Fire Ins. Co. v. Pascarella, 993 F.Supp. 134 (N.D.N.Y. 1998) ........................ 17

Portofino Ristorante & Catering, Inc. v. Michigan Millers Mut. Ins. Co., 198 A.D.2d 869, 604
        N.Y.S.2d 438 (4th Dept. 1993) ................................................................................... 13, 14, 15

Prudential Oil Corp. v. Phillips Petroleum Co., 418 F.Supp. 254 (S.D.N.Y. 1975).............. 20, 23

Ris v. National Union Fire Ins. Co. of Pittsburgh, Pa., 1989 WL 76199 (S.D.N.Y. 1989).......... 17

Wedtech Corp. v. Federal Insurance Company, 740 F.Supp. 214 (S.D.N.Y. 1990) .................... 16

**Statutes**

New York Insurance Law § 3105...................................................................16

**Treaties**

Siegel, N.Y. Prac. § 319 (4th Ed.)...............................................................22

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in support of a motion by United National Specialty Insurance Company ("UNSIC"), pursuant to Federal Rules of Civil Procedure 56(b), for an order awarding summary judgment to UNSIC. While plaintiff, C.D. Kobsons, Inc. ("Kobsons") seeks a declaration requiring the continuation of insurance coverage, UNSIC is entitled to obtain confirmation of termination of that coverage.

Fundamentally, based upon the information provided to it by Kobsons, UNSIC validly cancelled policy number M5200158, issued to Kobsons, which had a policy period from June 15, 2007 to June 15, 2008 ("UNSIC policy"), upon being advised of the issuance of an Emergency Declaration requiring the immediate shoring of the premises covered by the UNSIC policy, 500 West 28th Street, New York, NY, also known as 311 West 28th Street, New York, NY ("premises"). The cancellation was appropriately made because the shoring mandated by the Emergency Declaration was a material change in the nature or extent of the risk beyond that contemplated at the time of renewal.

Subsequent to the cancellation of the UNSIC policy and the commencement of this lawsuit, UNSIC became aware of numerous outstanding violations on the premises that had not been disclosed in successive application forms that had requested this information. In addition, Kobsons failed to disclose that it intended to demolish or carry out significant structural alterations to the premises. The failure to make these disclosures was material to UNSIC's assessment of this risk and the UNSIC policy would not have been renewed if disclosure had been made. Consequently, UNSIC is entitled to an order rescinding the UNSIC policy.

## FACTUAL BACKGROUND

### The Issuance and Renewal of the UNSIC Policy

In 2004, and the following three years, Kobsons sought insurance for the premises via its insurance broker, Cesar Arrascue ("Arrascue") of Arco Insurance Agency ("Arco"). See page 17, lines 3 to 16 of the deposition transcript of Arrascue appearing as Exhibit "A" to the declaration of Edward S. Benson ("Benson declaration"). In 2004, Arrascue assisted Kobsons, and its President, Doungrat "Diane" Eamtrakul ("Eamtrakul"), in the preparation of application forms to seek property and liability insurance from UNSIC. See page 17, lines 14 to 16 of the deposition transcript of Arrascue appearing as Exhibit "A" to the Benson declaration. While certain portions of the application forms were completed by Arrascue, on no occasion, either in 2004 or in subsequent years, did he sign them on Kobsons' behalf. See page 17, lines 14 to 16 of the deposition transcript of Arrascue appearing as Exhibit "A" to the Benson declaration. Instead, Eamtrakul confirmed that she always signed them on Kobsons' behalf. See page 24, lines 8 to 25; page 26, lines 2 to 14; page 65, lines 8 to 24 and page 66, lines 1 to 4 of Exhibit "B" to the Benson declaration.

The original application submitted in 2004 answered in the negative to a question whether "any structural alterations were contemplated" and to one that asked if any "demolition exposure contemplated." See Exhibit "B" to the affidavit of Migdalia ("Mickie") Colon ("Colon") ("Colon affidavit") at Bates number UNI 00176. An Anti-Arson application was also provided, dated July 22, 2004, and this answered in the negative whether there were any "outstanding recorded violations of fire, safety, health, building or construction codes" at the premises (question 4). See Exhibit "C" to the Colon affidavit. Based upon the content of the

2

application forms submitted, Morstan accepted the risk and the UNSIC policy was issued to Kobsons.

The Anti-Arson application submitted in 2004, and each subsequent year, contained the following language above the signature line on both the first and second pages advising that rescission could result from misrepresentation of a material fact. Underneath the signature line on the first page of the Anti-Arson application, it is noted that the insureds "shall notify the insurer in writing of any change in the information contained herein, upon renewal or annually whichever is sooner. Failure to comply may result in rescission of your policy."

The UNSIC policy was renewed in 2005 and 2006 and the same negative answer was given to question 4 on the Anti-Arson application. See Exhibit "C" to the Colon affidavit. Based upon the content of the application forms submitted by Arco on Kobsons' behalf, Morstan accepted the risk and the UNSIC policy was renewed in 2005 and 2006. See exhibit "D" to the Benson declaration.

In 2007, Morstan received a completed United National Group Renewal Application. See Exhibit "D" to the Colon affidavit. This two-page form states that it is "designed to capture any changes in operations since the prior policy was issued." The insured is asked to "[p]rovide information which differs from the original application." The four specific questions ask if there is any change in the insured's operations, whether there are additional premises, any updated loss information and for a list of any property or casualty additions or changes. Kobsons' responses on the United National Group Renewal Application are all in the negative. In addition, the Anti-Arson application that was submitted on Kobsons' behalf again denied the existence of any outstanding violations. Eamtrakul confirmed that she read and signed both the United National Group Renewal Application and the Anti-Arson application. See page 23, lines 18-25, page 24,

3

lines 1-18, page 65, lines 18-25 and page 66, lines 1-4 of Exhibit "B" to the Benson declaration. Based upon the content of the application forms submitted by Arco on Kobsons' behalf, Morstan accepted the risk and the UNSIC policy was renewed in 2007.

## The Emergency Declaration

On October 23, 2007 Arco provided notice to Morstan of the issuance of an Emergency Declaration regarding the insured premises. See Exhibit "E" to the Colon affidavit. The facsimile to Morstan concerned a letter and documentation that Arco had received from Kobsons. Arco requested that Morstan notify UNSIC and advise further. The documents accompanying the letter from Arco include a letter of October 23, 2007 from Kobsons to Arco that states as follows:

> I received a letter from NYC Department of Buildings Commissioner and Emergency Declaration regarding the unsafe condition of the building. Our engineer will contact DOB to comply with the repairs or demolishing the building. I was advised to notify you and please notify our Insurance Carrier accordingly.

The other documents sent by Arco include a letter from the New York City Department of Buildings ("DOB"), dated October 17, 2007 that states as follows:

> To Whom It May Concern:
>
> The referenced building, or portion thereof, has been declared unsafe and in imminent peril. It must be repaired or demolished immediately. The responsibility to take such action is yours and, because of the severity of the condition, the work must begin immediately. If you fail to do so, the City will perform the commencement of remedial work. If you fail to do so, the City will perform the

4

necessary work and seek to recover its expenses from you.

The accompanying Emergency Declaration states as follows:

**Conditions of Structure and Recommended Remedy:**

Second, third and fourth stories have sagged + or -4", at the center of the

building. Structural cracks have developed at exposure 4 (north wall), and interior

partitions. The wood stair-assembly, at all stories, is out of level.

Remedy:        Provide temporary shoring at the cellar and first story.

## Cancellation of the UNSIC Policy

Upon receipt of the October 23, 2007 communication from Arco, Colon, Morstan's

underwriter, determined that since shoring of the premises had been mandated by the Department

of Buildings, the premises now fell within the risks prohibited by UNSIC, requiring cancellation

of the UNSIC policy. See Colon affidavit at paragraph 20. In particular, Colon noted that the

UNSIC liability guidelines, at paragraph 14, prohibit the insuring of "[t]he shoring…. of

buildings or structures" (see Exhibit "A" to the Colon affidavit). Colon determined that the

UNSIC policy had to be cancelled based upon there being a material change in the nature or

extent of the risk since renewal, which had increased the risk beyond that contemplated at the

time the policy was renewed (paragraph 22 of the Colon affidavit"). Accordingly, on October 25,

2007, Morstan mailed a Notice of Cancellation to Kobsons (see Exhibit "F" to the Colon

affidavit). The Notice of Cancellation states that it is to be effective on November 27, 2007. The

reason for cancellation is noted as "Statutory reason 5E" which states as follows:

(E) material physical change in the property insured, occurring after issuance or

last annual renewal anniversary date of the policy, which results in the property

becoming uninsurable in accordance with the insurer's objective, uniformly

applied underwriting standards in effect at the time the policy was issued or last

renewed; or material change in the nature or extent of the risk, occurring after

issuance or last annual renewal anniversary date of the policy, which causes the

risk of loss to be substantially and materially increased beyond that contemplated

at the time the policy was issued or last renewed;


Kobsons received the Notice of Cancellation on October 30, 2007. See paragraph 7 of the

Complaint herein. Subsequent to receipt of the Notice of Cancellation, on or about November 27,

2007, Kobsons commenced the instant action.

**Premises' History of Violations**

Subsequent to the commencement of court proceedings by Kobsons, as part of an

investigation into the background of this matter, a review of the New York City Department of

Buildings ("DOB") database was conducted concerning the history of the premises. That review

revealed to UNSIC, for the first time, that several violations had been issued in 2005 and 2006

but had not been disclosed on the Anti-Arson application. These violations included the

following:

1. September 29, 2005---Failure to maintain interior building wall. Defects noted

included a vertical crack that is six feet long and an inch wide and missing bricks

in column.

2. January 4, 2006--- Two violations. A) Failure to maintain building. Defects

noted included sagging floors at levels one through three. B) Failure to maintain

exterior wall where entire wall has cracks and missing bricks.

6

3. January 26, 2006---- Failure to maintain exterior wall. Masonry on North

façade lintels crumbling and in disrepair and mortar missing from bricks near roof

level.

4. June 1, 2006--- Two violations. A) Work without permit—installing steel

beams and columns in cellar.    B) North elevation brownstone masonry

delaminating creating a hazardous condition.

See Exhibit "H" to the Colon affidavit. All of these violations remained active up to and

including the issuance of the Emergency Declaration. See, Exhibit "H" to the Colon affidavit and

Exhibit "C" to the Benson declaration, testimony of Naweed A. Chaudhri of the DOB at pages

47 and 48. Moreover, hearings were held regarding these violations and were attended by

Kobsons' president, Eamtrakul. See Exhibit "H" to the Colon affidavit. Fines ranging from $800

to $2,000.00 were imposed. Id.

In addition to the violations from the DOB, Kobsons also failed to disclose numerous

outstanding violations imposed by the New York City Department of Housing and Development

("HPD") outstanding on the premises in 2007. A copy of the HPD violation list is annexed as

Exhibit "H" to the Colon affidavit.

Even though the Anti-Arson application forms that were signed by Eamtrakul and

submitted to Morstan did not disclose any violations in the period from 2004 through 2007, the

violations were present and known to Kobsons. Moreover, Arrascue of Arco testified that he was

never advised of them but, if he had been, would have immediately transmitted them to Morstan.

See Exhibit A to the Benson declaration at pages 43 and 44.

7

**Kobsons' Lawsuit**

Kobsons originally brought suit against UNSIC in the Supreme Court of the State of New York, New York County. Immediately on issuance of its action, Kobsons brought a motion by Order to Show Cause seeking to enjoin UNSIC from persisting in its cancellation of the UNSIC policy. Before that motion could be heard, UNSIC filed a Notice of Removal, removing the action to the U.S. District Court for the Southern District of New York.

Kobsons seeks a declaration that UNSIC's termination of coverage is null and void and that 500 West 28th Street is insured by UNSIC under a general liability policy to the end of the policy term and any applicable renewals to which Kobsons may be entitled. Kobsons also seeks a declaration that UNSIC has waived and is estopped from canceling coverage to Kobsons or otherwise restricting the coverage available.

UNSIC served an answer to the Kobsons complaint and asserted a counterclaim against Kobsons arising from the discovery that Kobsons did not disclose the existence of violations assessed against the premises. The counterclaim seeks a declaration that the UNSIC policy is void ab initio because of these material misrepresentations. In addition, the counterclaim seeks a declaration that Kobsons' conduct was fraudulent and that United should be awarded damages comprising of its costs of investigation and legal fees.

## **ARGUMENT**

## **POINT I**

## **THE STANDARD FOR SUMMARY JUDGMENT**

One finds a summary of the standard to be applied to determine whether a movant has

met its burden on a motion for summary judgment burden set forth in the Supreme Court's

decision in Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)

("Celotex"). In Celotex, Justice Rehnquist, writing for the majority stated that:

> …. we find no express or implied requirement in Rule 56 that the moving party
>
> support its motion with affidavits or other similar materials *negating* the
>
> opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, *if*
>
> *any*" (emphasis added), suggests the absence of such a requirement. And if there
>
> were any doubt about the meaning of Rule 56(c) in this regard, such doubt is
>
> clearly removed by Rules 56(a) and (b), which provide that claimants and
>
> defendants, respectively, may move for summary judgment "*with or without*
>
> *supporting affidavits*" (emphasis added). The import of these subsections is that,
>
> regardless of whether the moving party accompanies its summary judgment
>
> motion with affidavits, the motion may, and should, be granted so long as
>
> whatever is before the district court demonstrates that the standard for the entry of
>
> summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal
>
> purposes of the summary judgment rule is to isolate and dispose of factually
>
> unsupported claims or defenses, and we think it should be interpreted in a way
>
> that allows it to accomplish this purpose.

Id. 477 U.S. at 323, 106 S.Ct. at 2553. Thus, in cases in where the ultimate burden at trial rests on the nonmoving party, the moving party can satisfy its obligations on summary judgment by submitting affirmative evidence negating an essential element of the non-movant's claim or by demonstrating that the nonmoving party's evidence itself is insufficient to establish an essential element of its claim. It is clear that a party may discharge its burden under Rule 56 by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for the opposing party. When no reasonable tier of fact could find in favor of the non-moving party, summary judgment may be granted to the movant. See, Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995).

In the case at bar, there is no uncertainty with regard to the basis of the cancellation of the UNSIC policy. At the time of the renewal, the shoring of the premises was not mandated. When the Emergency Declaration was issued, shoring was immediately required. As a building to be shored is a prohibited risk under UNSIC's guidelines, cancellation was warranted. Similarly, there is no doubt that Kobsons failed to disclose both the numerous violations on the premises and its intention to carry out demolition and/or structural alterations. This non-disclosure was material and entitles UNSIC to rescission of the UNSIC policy.

## POINT II

### THE UNSIC POLICY WAS VALIDLY CANCELLED

UNSIC properly cancelled the UNSIC policy pursuant to New York Insurance Law. Once Morstan was apprised of the Emergency Declaration and noted that it required shoring, a prohibited risk under the UNSIC guidelines, there was no option but to terminate coverage. The fact that the issuance of the Emergency Declaration comprised a material change in the nature and extent of the risk fully supported the basis of cancellation and must lead this court to confirm the validity of the termination of the UNSIC policy.

"Statutory reason 5E" is the basis for the cancellation. Reason 5E comprises two different reasons. The first is a "material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, which results in the property becoming uninsurable in accordance with the insurer's objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed." While this is the portion of reason 5E that Kobsons has sought to focus upon in this litigation, it is not the part relied upon by UNSIC.[1]

The second reason contained within reason 5E is a "material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed."

There clearly was a change in the nature or extent of the risk from the time of renewal through to the cancellation. The starting point for assessing the change is what was "...contemplated at the time the policy was....last renewed." At the time of renewal in June

---

[1] Kobsons' reliance on the parlous condition of the premises and its desire to vacate it and either carry out extensive repairs or demolish it is, however, of relevance to UNSIC's alternative rescission argument, discussed below.

11

2007, a violation-free building was contemplated by UNSIC simply because Kobsons had failed to disclose the existence of multiple violations for failure to maintain. There was no mandate from the DOB requiring shoring. In that context, when UNSIC was confronted with an Emergency Declaration advising that the premises had been declared "unsafe and in imminent peril" and it "must be repaired or demolished immediately," the risk level was increased by a material amount. Notably, Kobsons' own letter of October 23, 2007 states that Kobsons' "engineer will contact DOB to comply with the repairs or demolishing the building" suggesting the severity of the problem could justify demolition. Most importantly, the premises now had to be immediately shored, bringing the premises within a class of risks prohibited by the UNSIC underwriting guidelines. This presented a material change in the magnitude of risk from an apparently[2] non-prohibited to a prohibited risk under the UNSIC guidelines.

The significance of the Emergency Declaration is underscored by the testimony of Kobsons' own broker, an individual of 28 years experience. Arrascue answered in the affirmative when he was asked if he considered that the issuance of the Emergency Declaration was a material change in the nature or extent of the risk (page 71, lines 8 to 13 of Exhibit "A" to the Benson declaration). In addition, Arrascue testified that if the Emergency Declaration had been issued prior to the 2007 renewal, UNSIC would not have renewed based upon the content of underwriting guidelines (page 65, lines 16 to 24 of Exhibit "A" to the Benson declaration). Moreover, as evidence of the significance of the Emergency Declaration, Arrascue provided testimony about his unsuccessful efforts thereafter to obtain insurance from several insurance outlets. Arrascue noted his belief that he would have obtained insurance for Kobsons, based upon

---

[2] Kobsons had, of course, failed to disclose the violations present on the premises so that the risk contemplated by UNSIC on renewal was one without numerous violations for failure to maintain the premises.

the information submitted to Morstan when renewal was sought, from the various agencies that refused coverage after cancellation (page 58, lines 5 to 15 of Exhibit "A" to the Benson declaration).

In an analogous situation to the present matter, a court examined and confirmed a cancellation which relied upon reason 5E in Portofino Ristorante & Catering, Inc. v. Michigan Millers Mut. Ins. Co., 198 A.D.2d 869, 604 N.Y.S.2d 438 (4th Dept. 1993) ("Portofino"). In Portofino, the application stated that the property was "fully sprinklered," that it had an automatic extinguisher system on service contract, that there was an automatic shut-off on the fuel supply, and that all vents, hoods, ducts and floors were free of grease accumulation. Four months later, a loss control inspection was conducted on plaintiffs' premises. The loss control report stated that the premises were not completely covered by sprinklers, that the premises lacked the identified fire protection system for the kitchen, that there was no automatic shut-off on the fuel supply, and that the kitchen grease filtration system was inadequate. Based on that report, the insurer sent plaintiffs a notice of cancellation on the basis that there was a substantial increase in the nature and extent of the risk of loss beyond that which was contemplated at the time the policy was issued. The insured's premises were destroyed by fire after the cancellation. The court found that the cancellation was proper noting as follows:

> Defendant established that, contrary to the facts stated in the application for insurance, there were major deficiencies in the premises that did not meet defendant's underwriting guidelines and that constituted a material change in the nature and extent of the risk of loss beyond that contemplated by the parties. No evidence was submitted by plaintiffs to demonstrate that the loss control inspection report was inaccurate or that the new conditions did not materially

13

change the nature and extent of the risk of loss. Rather, plaintiffs argued that there

were no material changes in the premises between the time the policy of insurance

was issued and the notice of cancellation. That argument, however, does not rebut

defendant's showing that the conditions that existed at the time of the loss control

inspection differed from those stated in the application for insurance and

substantially increased defendant's risk of loss.

Id. 198 A.D.2d at 870, 604 N.Y.S.2d at 439. While Portofino is not fully on point with

regard to the circumstances of the current matter, it supports UNSIC's arguments. In particular,

there are parallels in Kobsons' failure to disclose prior violations, which would have provided

UNSIC with details of Kobsons' failure to repair and maintain and would have put UNSIC on

inquiry, and the inaccurate description of the condition of the property in Portofino. Similarly,

while there was no inspection carried out in 2007 on UNSIC's behalf, the imposition of the

Emergency Declaration by the DOB exposed the true condition of the premises, which led to the

cancellation. Ultimately, the mandate from the DOB that required immediate shoring meant that

the premises "did not meet defendant's underwriting guidelines" justifying the cancellation.

Notably, the court in Portofino rejected exactly the argument that Kobsons has made in

this case: that cancellation was not warranted because there had been no material changes in the

condition of the premises between the time the policy of insurance was renewed and its

cancellation. The key for the Portofino court was whether the position at the time of cancellation

differed from that indicated by the application for insurance. In the case at bar, the situation

presents an even stronger basis than in Portofino because, at the time of renewal, it is undisputed

that there was no Emergency Declaration mandating shoring while, at the time of cancellation,

there was such a mandate. As in <u>Portofino</u>, the risk had changed to one which did not meet

UNSIC's underwriting guidelines, which note as follows:

> We do wish to emphasize, however, that the following
>
> classifications are specifically excluded:
>
> 14. The shoring, moving or wrecking of buildings or structures.

In the case at bar, UNSIC's cancellation was clearly proper as the Emergency Declaration

comprised a material change in the nature or extent of the risk which did not meet UNSIC's

underwriting guidelines. As a result, the validity of the cancellation must be confirmed and

Kobsons' claims dismissed.

## POINT III

## KOBSONS' MATERIAL NON-DISCLOSURE OF NUMEROUS VIOLATIONS AND ITS INTENTION TO DEMOLISH ENTITLES UNSIC TO RESCIND ITS POLICY

In New York, when an insured omits certain information from an insurance application

which conceals matters material to the risk to be insured, the policy issued as a result may be

voided from its inception. *See*, Kulikowski v. Roslyn Savings Bank, 121 A.D. 2d 603, 503

N.Y.S.2d 863 (2d Dept. 1986). It is well established law in the state of New York that an insurer

is relieved of liability if the insured has made false statements in the application for insurance,

such statements are material, and the insurer can demonstrate that it would not have issued the

policy if it had known of the true facts. Wedtech Corp. v. Federal Insurance Company, 740

F.Supp. 214 (S.D.N.Y. 1990) (quoting Eastern District Piece Dye Works, Inc. v. The Traveler

Insurance Co., 234 N.Y. 441, 138 N.E. 401 (1923)). In such circumstances, the insurance

company is entitled to rescind the policy. INA Underwriters Ins. Co. v. D.H. Forde & Co., P.C.,

630 F.Supp. 76 (W.D.N.Y. 1985); Kantor v. Nationwide Life Ins. Co., 16 A.D.2d 701, 227

N.Y.S.2d 703 (2d Dept. 1962).

Under § 3105 of New York Insurance Law, a representation is defined as "a statement as

to past or present fact" made prior to the issuance of the policy. A misrepresentation is a false

representation. However, a misrepresentation will not allow an insurer to defeat recovery or

avoid the policy unless it was "material." Materiality is deemed if "knowledge by the insurer of

the facts misrepresented would have led to a refusal by the insurer to make such a contract."

A misrepresentation will be deemed "material" if knowledge by the insurance company

of the misrepresented fact would have resulted in a refusal to issue the same exact policy.

Christiania General Ins. Corp. v. Great Am. Ins. Co., 979 F.2d 268, 279 (2d Cir. 1992). In one

leading case, Geer v. Union Mut. Life Ins. Co., 273 N.Y. 261, 7 N.E.2d 125 (1937) the court

16

focused on how the conduct of the prospective insured had impacted the ability of the insurer to make an informed choice, noting as follows:

> On the other hand, where an applicant for insurance has notice that before the insurance company will act upon the application, it demands that specified information shall be furnished for the purpose of enabling it to determine whether the risk should be accepted, any untrue representation, however innocent, which either by affirmation of an untruth or suppression of the truth, substantially thwarts the purpose for which the information is demanded and induces action which the insurance company might otherwise not have taken, is material as matter of law. The question in such case is not whether the insurance company might perhaps have decided to issue the policy even if it had been apprised of the truth, the question is whether failure to state the truth where there was duty to speak prevented the insurance company from exercising its choice of whether to accept or reject the application upon a disclosure of all the facts which might reasonably affect its choice.

Id. at 273 N.Y. at 266, 7 N.E.2d at 127. In the case at bar, Kobsons repeatedly withheld information that was specifically requested and which prevented Morstan and UNSIC from exercising its choice regarding whether to write this risk. Kobsons failed to disclose the violations and did not advise that it was actively attempting to obtain permission to vacate the premises and to demolish them. Even if Kobsons withheld this information innocently, it is still a valid basis for rescission. See, e.g., Nationwide Mut. Fire Ins. Co. v. Pascarella, 993 F.Supp. 134 (N.D.N.Y. 1998), Ris v. National Union Fire Ins. Co. of Pittsburgh, Pa., 1989 WL 76199 (S.D.N.Y. 1989), Chicago Ins. Co. v. Halcond, 49 F.Supp.2d 312 (S.D.N.Y. 1999) and Mutual

Ben. Life Ins. Co. v. JMR Electronics Corp., 848 F.2d 30, 32 (2d Cir.1988). Both the underwriter at Morstan and at UNSIC confirm that this information would always have led UNSIC to refuse to write a policy. See paragraphs 29 and 30 of the Colon affidavit and paragraphs 7 and 8 of the affidavit of Priscilla Priestman.

The position in the case at bar is similar to the situation in Bleecker Street Health & Beauty Aids, Inc. v. Granite State Ins. Co., 38 A.D.3d 231, 834 N.Y.S.2d 1 (1st Dept. 2007). In that case, the court found that a misrepresentation was material based upon the affidavit of an underwriter, noting as follows:

> In this action by a proposed insured against its insurer for breach of contract in disclaiming coverage for a loss resulting from a fire that began in an upstairs restaurant, plaintiff misrepresented on its application that there was no such establishment in the building utilizing a deep fryer. The insurer demonstrated that this misrepresentation was material by submitting an appropriate affidavit from its underwriter, along with a description of its computer system's handling of applications and excerpts from its underwriting guidelines... Although the guidelines stated only that the type of hazard at issue is "to be considered" rather than coverage being denied in such instance, and the insurer's computer logic system would not have automatically denied the application but would merely have triggered review by an underwriter,..... the underwriter herself averred-not as a mere conclusion, but as an invariable fact based upon her experience .....that the insurer's internal unit considering the matter "always" denied an application if there was a deep fryer or restaurant above the premises of the proposed insured.

Id. 38 A.D.3d at 232, 834 N.Y.S.2d at 2. In the case at bar, two underwriters have confirmed that both the existence of the undisclosed violations and the intention to undertake structural alterations and/or demolition to the premises would have always led to rejection of the risk. See affidavit of Priscilla Priestman at paragraphs 7 and 8 and Colon affidavit at paragraph 30. This invariable fact was based both on the content of the underwriting guidelines and how the underwriters always proceeded when confronted by a proposed risk of this type. The Priestman and Colon affidavits demonstrate the materiality of Kobsons' misrepresentations entitling UNSIC to the rescission it seeks on its counterclaim.

An additional confirmation of the materiality of the violations that Kobsons suppressed comes from Arrascue, Kobsons' broker. He noted that if he had been told of the existence of the undisclosed violations, he would have advised Morstan and/or UNSIC because "...it is part of the underwriting procedure. They have to know that in order to assess the risk." See pages 43 and 44 of Exhibit "A" to the Benson declaration. Arrascue acknowledged that knowing whether violations have been assessed against a property is an important piece of information in the underwriting process. Id. In addition, Arrascue's understanding was that the existence of violations would have precluded the renewal of the Diamond policy. See pages 65 and 66 of Exhibit "A" to the Benson declaration.

Since it is clear that if Kobsons' intentions and the violations had been disclosed, Morstan and UNSIC would have refused to renew the UNSIC policy, these misrepresentations were material and entitle UNSIC to rescission.

**POINT IV**

## THE CIRCUMSTANCES OF THE CASE AT BAR DO NOT PRESENT AN ELECTION OF REMEDIES SITUATION

  Kobsons recently sought leave to amend its reply to UNSIC's counterclaim to add the affirmative defense of Election of Remedies. At the pre-motion conference, held on May 1, 2008, leave was granted. However, since that time, Kobsons has not served or filed its amended pleading. Nonetheless, in case Kobsons does so serve and file, it is UNSIC's position that its counterclaim, seeking rescission, is not barred by the doctrine of Election of Remedies.

  The doctrine of Election of Remedies is viewed with disfavor in New York. It is most typically raised in circumstances where an initial action has proceeded on one theory and, thereafter, a subsequent proceeding was brought on the same facts asserting a different basis of claim. As noted by the Court in Prudential Oil Corp. v. Phillips Petroleum Co., 418 F.Supp. 254, 257 (S.D.N.Y. 1975) ("Prudential"):

> The doctrine of election of remedies "represents a harsh and arbitrary principle
> designed only to prevent vexatious litigation" and "should be applied only where
> there has clearly been an irrevocable election." .... Accordingly, it has been the
> policy of the New York courts to apply "a liberal doctrine . . . rather than a narrow
> and harsh one" in regard to the election of remedies. Under New York law, for an
> election of remedies to bar the pursuit of alternative relief, legal and equitable, a
> party must have chosen one of two or more co-existing inconsistent remedies, and
> in reliance upon that election, that party must also have gained an advantage, or
> the opposing party must have suffered some detriment. For remedies to be
> inconsistent, it must be shown that "a certain state of facts relied on as the basis of

20

a certain remedy is inconsistent with, and repugnant to, another certain state of facts relied on as the basis of another remedy." The mere availability of, and request for more than one remedy, does not satisfy the requirement of inconsistent theories, for the remedies may be consistent or cumulative. .....

In the case at bar, there has not been a prior action. The facts relied upon by UNSIC are wholly consistent and provide support for its alternative remedies, both of which seek termination of the UNSIC policy, effective on different dates. With regard to the cancellation, United asserts that it was proper based upon the statutory ground that a "....material change in the nature or extent of the risk, occurring after ... last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was.... last renewed." The material change that occurred after the last renewal was the issuance of an Emergency Declaration which stated as follows:

### Conditions of Structure and Recommended Remedy:

Second, third and fourth stories have sagged + or -4", at the center of the building. Structural cracks have developed at exposure 4 (north wall), and interior partitions. The wood stair-assembly, at all stories, is out of level.

Remedy:        Provide temporary shoring at the cellar and first story.

UNSIC's alternative remedy of rescission is not based on facts inconsistent with the above basis of the cancellation. After commencement of this lawsuit, UNSIC ascertained, for the first time, that several violations had been issued in 2005 and 2006 but had not been disclosed on Anti-Arson application forms that were part of Kobsons' application for insurance. These violations included the failure to maintain the interior and exterior building walls and included

21

such items as a vertical crack that is six feet long and an inch wide, sagging floors at levels one through three, and lintels crumbling and in disrepair. All of the violations remained active up to and beyond the renewal of the UNSIC policy. It is UNSIC's contention that the failure to disclose these violations was a material misrepresentation entitling UNSIC to rescind the UNSIC policy.

The rescission claim is not inconsistent with UNSIC alternative theory of cancellation. It is potentially cumulative, nothing more, as the factual bases are not inconsistent. Both remedies seek the termination of the UNSIC policy, differing only as to the time when such termination should occur. Unlike situations where parties simultaneously seek rescission and damages under a contract, there is no reason to prevent UNSIC from seeking this alternative relief. Moreover, as UNSIC's theories are contained within a single action, there is no basis for the preclusive result that plaintiff seeks. An example given by the treatise, Siegel, N.Y. Prac. §219 (4th. Ed.) illustrates this point:

> Suppose, for example, that P is suing D to rescind a contract for fraud, or for specific performance in the alternative in the event that the fraud claim is not sustained. Rescission and specific performance are about as inconsistent as demands can be. Yet the trial judge can postpone the election until after the trial. The trial, in fact, may manifest that the plaintiff has no election after all. It may find, for example, that the defendant is not guilty of fraud, which would mean that rescission is barred, leaving only the plaintiff's alternative demand, the demand for specific performance. The fact-finding process, in other words, can be allowed to precede the election whenever there is any doubt about what the plaintiff has to

22

elect from. And if the facts found do sustain both items of relief, the election can be compelled after trial but before judgment.

Clearly, the remedies sought in the case at bar are not inconsistent in the manner of rescission and specific performance which, in the opinion of that treatise, would not be barred. See, also, Baratta v. Kozlowski, 94 A.D.2d 454, 464 N.Y.S.2d 803 (2d Dept. 1983) and Prudential, 418 F.Supp. at 258. It is also notable that the N.Y. Civil Practice Law & Rules §3002(e) specifically provides that a claim for damages and rescission based upon misrepresentation is not barred for inconsistency. See, e.g., Gulf Ins. Co. v. Transatlantic Reinsurance Co., 13 A.D.3d 278, 788 N.Y.S.2d 44 (1st Dept. 2004) and Allen v. Westpoint-Pepperell, Inc., 11 F.Supp.2d 277, 289 (S.D.N.Y. 1997). The relief sought by UNSIC herein is not inconsistent and, similarly, not barred.

Accordingly, if Kobsons actually amends its Reply, there is simply no basis in fact or law for a finding that UNSIC's Counterclaim is barred by the doctrine of Election of Remedies.

## CONCLUSION

This is a case where an insured failed to disclose critical information to its insurer. Without knowledge of the numerous violations indicating the structural problems at the insured premises, UNSIC could not have contemplated, at the time of renewal in 2007, that immediate shoring of the premises would be required. There was no Emergency Declaration requiring such action at that time. Accordingly, when just such an Emergency Declaration mandated shoring, a prohibited risk under the UNSIC policy, cancellation was wholly appropriate as it was a material change in the nature or extent of the risk beyond that contemplated at the time of renewal.

Kobsons also failed to disclose the numerous outstanding violations on the premises and its long held intention to demolish or carry out significant structural alterations to the premises. The failure to make these disclosures was material to UNSIC's assessment of this risk and the UNSIC policy would not have been renewed if disclosure had been made. Consequently, UNSIC is entitled to an order rescinding the UNSIC policy.

Dated: New York, New York
     May 20, 2008

                          Respectfully Submitted,

                          Nicoletti Gonson Spinner & Owen LLP

By: _____
                          Edward S. Benson (EB-1908)
                          Attorneys for Defendant
                          UNITED NATIONAL SPECIALTY
                          INSURANCE COMPANY
                          555 Fifth Avenue
                          8th Floor
                          New York, NY 10017
                          212-730-7750