UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------x
C.D. KOBSONS, INC.,                          :     Civil Action No.: 07 CV 11034 (SAS)
                                             :
                              Plaintiff,     :     **Rule 56.1 Statement**
        -against-                            :
                                             :
UNITED NATIONAL SPECIALTY                    :
INSURANCE COMPANY,                           :
                                             :
                              Defendant.     :
---------------------------------------------------x

Defendant, UNITED NATIONAL SPECIALTY INSURANCE COMPANY ("UNSIC"), by its undersigned attorneys, sets forth the statement of its contention as to material facts not genuinely in dispute, pursuant to Local Rule 56.1, in support of its motion for summary judgment, as follows:

1. C.D. Kobsons, Inc. ("Kobsons") is the owner of premises at 500 West 28th Street, New York, NY, also known as 311 West 28th Street, New York, NY ("premises"). See page 8, lines 5 to 9 of the deposition transcript of Doungrat "Diane" Eamtrakul ("Eamtrakul") appearing as Exhibit "B" to the declaration of Edward S. Benson ("Benson declaration").

2. In 2004, and the following three years, C.D. Kobsons, Inc. ("Kobsons") sought insurance for the premises via its insurance broker, Cesar Arrascue ("Arrascue") of Arco Insurance Agency ("Arco"). See page 17, lines 3 to 16 of the deposition transcript of Arrascue appearing as Exhibit "A" to the Benson declaration.

3. In 2004, Arrascue assisted Kobsons, and its President, Eamtrakul, in the preparation of application forms to seek property and liability insurance from UNSIC. See page 17, lines 14 to 16 of the deposition transcript of Arrascue appearing as Exhibit "A" to the Benson declaration.

4. While certain portions of the application forms were completed by Arrascue, on no occasion, either in 2004 or in subsequent years, did he sign them on Kobsons' behalf. See page 17, lines 14 to 16 of the deposition transcript of Arrascue appearing as Exhibit "A" to the Benson declaration.

5. Eamtrakul confirmed that she always signed the application forms on Kobsons' behalf. See page 24, lines 8 to 25; page 26, lines 2 to 14; page 65, lines 8 to 24 and page 66, lines 1 to 4 of Exhibit "B" to the Benson declaration.

6. The original application submitted to obtain insurance from UNSIC in 2004 answered in the negative to a question whether "any structural alterations were contemplated" and to one that asked if any "demolition exposure contemplated." See Exhibit "B" to the affidavit of Migdalia ("Mickie") Colon ("Colon") ("Colon affidavit") at Bates number UNI 00176.

7. As part of the application process in 2004, an Anti-Arson application was also provided, dated July 22, 2004, and this answered in the negative whether there were any "outstanding recorded violations of fire, safety, health, building or construction codes" at the premises (question 4). See Exhibit "C" to the Colon affidavit.

8. Based upon the content of the application forms submitted, Morstan accepted the risk and issued to Kobsons policy number M5156187, with a policy period from June 15, 2004 to June 15, 2005 ("UNSIC policy"). See paragraphs 5 and 6 of the Colon affidavit.

9. The UNSIC policy was renewed under the same policy number in 2005 and 2006 but was renewed in 2007 under policy number M5200158. See paragraphs 5 and 6 of the Colon affidavit and Exhibit "D" to the Benson declaration.

10. The Anti-Arson application submitted in 2004, and each subsequent year through and including 2007, contained the following language above the signature line on both the first and second pages:

> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.
>
> THE PROPOSED INSURED AFFIRMS THAT THE FOREGOING INFORMATION IS TRUE AND AGREES THAT THESE APPLICATIONS SHALL CONSTITUTE A PART OF ANY POLICY ISSUED WHETHER ATTACHED OR NOT AND THAT ANY WILLFUL CONCEALMENT OR MISREPRESENTATION OF A MATERIAL FACT OR CIRCUMSTANCES SHALL BE GROUNDS TO RESCIND THE INSURANCE POLICY.

Exhibits "C" to the Colon affidavit.

11. Underneath the signature line on the first page of the Anti-Arson applications submitted in 2004, and each subsequent year through and including 2007, the following language is included:

> INSUREDS SHALL NOTIFY THE INSURER IN WRITING OF ANY CHANGE IN THE INFORMATION CONTAINED HEREIN, UPON RENEWAL OR ANNUALLY WHICHEVER IS SOONER. FAILURE TO COMPLY MAY RESULT IN RESCISSION OF YOUR POLICY.

Exhibits "C" to the Colon affidavit.

12. The UNSIC policy was renewed in 2005 and 2006 and the same negative answer was given to question 4 on the Anti-Arson application. See Exhibit "C" to the Colon affidavit.

13. In 2007, Morstan received a completed United National Group Renewal Application from Arco. See Exhibit "D" to the Colon affidavit.

14. The United National Group Renewal Application is a two-page form which states that it is "designed to capture any changes in operations since the prior policy was issued." The insured is asked to "[p]rovide information which differs from the original application." See Exhibit "D" to the Colon affidavit.

15. Eamtrakul confirmed that she read and signed both the United National Group Renewal Application and the Anti-Arson application submitted in 2007. See page 23, lines 18-25, page 24, lines 1-18, page 65, lines 18-25 and page 66, lines 1-4 of Exhibit "B" to the Benson declaration.

16. Based upon the content of the application forms submitted by Arco on Kobsons' behalf, Morstan accepted the risk and the UNSIC policy was renewed in 2007. See paragraphs 13, 14 and 15 of the Colon affidavit.

17. On October 23, 2007 Arco provided notice to Morstan of the issuance of an Emergency Declaration regarding the insured premises. See Exhibit "E" to the Colon affidavit.

18. The facsimile of October 23, 2007 to Morstan concerned a letter and documentation that Arco had received from Kobsons. Arco requested that Morstan notify United and advise further. See Exhibit "E" to the Colon affidavit.

19. The documents accompanying the letter from Arco dated October 23, 2007, as part of Exhibit "H" to the Colon affidavit, include a letter of October 23, 2007 from Kobsons to Arco which states as follows:

> I received a letter from NYC Department of Buildings Commissioner and Emergency Declaration regarding the unsafe condition of the building. Our engineer will contact DOB to comply with the repairs or demolishing the building. I was advised to notify you and please notify our Insurance Carrier accordingly.

20. The other documents sent by Arco on October 23, 2007, as part of Exhibit "H" to the Colon affidavit, include a letter from the New York City Department of Buildings, dated October 17, 2007 which states as follows:

> To Whom It May Concern:
>
> The referenced building, or portion thereof, has been declared unsafe and in imminent peril. It must be repaired or demolished immediately. The responsibility to take such action is yours and,

because of the severity of the condition, the work must begin immediately. If you fail to do so, the City will perform the commencement of remedial work. If you fail to do so, the City will perform the necessary work and seek to recover its expenses from you.

21. The Emergency Declaration, dated October 17, 2007, which is part of Exhibit "H" to the Colon affidavit, states as follows:

    **Conditions of Structure and Recommended Remedy:**

    Second, third and fourth stories have sagged + or -4", at the center of the building. Structural cracks have developed at exposure 4 (north wall), and interior partitions. The wood stair-assembly, at all stories, is out of level.

    Remedy:    Provide temporary shoring at the cellar and first story.

22. The Underwriting Guidelines for UNSIC provide, at paragraph 14, that "[t]he shoring.... of buildings or structures" are specifically excluded from coverage as a prohibited risk. See paragraphs 20 and 21 of the Colon affidavit and Exhibit "A" thereto.

23. Upon receipt of the October 23, 2007 communication from Arco, Colon, Morstan's underwriter, determined that since shoring of the premises had been mandated by the Department of Buildings, the premises now fell within the risks prohibited by UNSIC, requiring cancellation of the UNSIC policy. See Colon affidavit at paragraph 20.

24. Colon determined that the UNSIC policy had to be cancelled based upon there being a material change in the nature or extent of the risk since renewal which had increased the risk beyond that contemplated at the time the policy was renewed (paragraph 22 of the Colon affidavit).

25. On October 25, 2007, Morstan mailed a Notice of Cancellation to Kobsons. See paragraph 23 and Exhibit "F" to the Colon affidavit).

26. The Notice of Cancellation states that it is to be effective on November 27, 2007. Kobsons (see Exhibit "F" to the Colon affidavit).

27. The reason for cancellation is noted as "Statutory reason 5E" which states as follows:
    (E) material physical change in the property insured, occurring after issuance
    or last annual renewal anniversary date of the policy, which results in the
    property becoming uninsurable in accordance with the insurer's objective,
    uniformly applied underwriting standards in effect at the time the policy was
    issued or last renewed; or material change in the nature or extent of the risk,
    occurring after issuance or last annual renewal anniversary date of the policy,
    which causes the risk of loss to be substantially and materially increased
    beyond that contemplated at the time the policy was issued or last renewed
    See Exhibit "F" to the Colon affidavit.

28. Kobsons received the Notice of Cancellation on October 30, 2007 (see paragraph 7 of the Complaint).

29. Several violations had been issued in 2005 and 2006 on the premises but had not been disclosed on any Anti-Arson application or otherwise. See Exhibit "H" to the Colon affidavit

30. These violations included the following:

1. September 29, 2005---Failure to maintain interior building wall. Defects noted included a vertical crack that is six feet long and an inch wide and missing bricks in column.

2. January 4, 2006--- Two violations. A) Failure to maintain building. Defects noted included sagging floors at levels one through three. B) Failure to maintain exterior wall where entire wall has cracks and missing bricks.

3. January 26, 2006---- Failure to maintain exterior wall. Masonry on North façade lintels crumbling and in disrepair and mortar missing from bricks near roof level.

4. June 1, 2006--- Two violations. A) Work without permit—installing steel beams and columns in cellar.   B) North elevation brownstone masonry delaminating creating a hazardous condition.

See Exhibit "H" to the Colon affidavit.

31. All of these violations remained active up to and including the issuance of the Emergency Declaration. See Exhibit "H" to the Colon affidavit and Exhibit "C" to the Benson declaration, testimony of Naweed A. Chaudhri of the DOB at pages 47 and 48.

32. Hearings were held regarding the violations and were attended by Kobsons' president, Eamtrakul. See Exhibit "H" to the Colon affidavit.

33. At the violation hearings, fines ranging from $800 to $2,000.00 were imposed. Id.

34. In addition to the violations from the DOB, Kobsons also failed to disclose numerous outstanding violations imposed by the New York City Department of Housing and

Development ("HPD") outstanding on the premises in 2007. A copy of that violation list is annexed as part of Exhibit "H" to the Colon affidavit.

35. Arrascue of Arco testified that he was never advised of any violations but, if he had been, would have immediately transmitted them to Morstan. See Exhibit "A" to the Benson declaration at pages 43 and 44.

36. If Kobsons had disclosed the violations on the premises, Morstan and UNSIC would not have renewed the UNSIC policy. See paragraphs 29 and 30 of the Colon affidavit and paragraphs 7 and 8 of the affidavit of Priscilla Priestman ("Priestman affidavit").

37. From September 2005 onwards, Kobsons sought permission to vacate the premises with the intention of demolishing them or carrying out extensive renovations. See, correspondence annexed as Exhibit "I" to the Colon affidavit and pages 79, 80 and 81 of Exhibit "B" to the Benson declaration.

38. If Kobsons had disclosed that it was contemplating structural alterations and demolition exposure since 2005 under no circumstances would the UNSIC policy have been renewed in 2007. See paragraphs 31 and 32 of the Colon affidavit and paragraph 9 of the Priestman affidavit.

39. Arrascue considered that the issuance of the Emergency Declaration was a material change in the nature or extent of the risk (page 71, lines 8 to 13 of Exhibit "A" to the Benson declaration).

40. Arrascue testified that if the Emergency Declaration had been issued prior to the 2007 renewal, UNSIC would not have renewed based upon the content of underwriting guidelines (page 65, lines 16 to 24 of Exhibit "A" to the Benson declaration).

41. Arrascue was unsuccessful in his efforts to obtain insurance from several insurance outlets after cancellation of the UNSIC policy (pages 54 and 55 of Exhibit "A" to the Benson declaration).

42. Arrascue noted his belief that the various agencies would have obtained insurance for Kobsons based upon the information submitted to Morstan to obtain renewal (page 58, lines 5 to 15 of Exhibit "A" to the Benson declaration).

43. UNSIC has attempted to return the premium paid for the UNSIC policy, both upon cancellation (pro-rated) and rescission (full). See paragraph 10 of the Priestman affidavit and paragraph 24 of the Colon affidavit.

Dated: New York, New York
      May 20, 2008

Respectfully Submitted,

Nicoletti Gonson Spinner & Owen LLP

By: _____
    Edward S. Benson (EB 1908)
Attorneys for Defendant
UNITED NATIONAL SPECIALTY
INSURANCE COMPANY
555 Fifth Avenue
8th Floor
New York, NY 10017
212-730-7750

To: Brill & Associates, P.C.
    Attorneys for the Plaintiff
    111 John Street, Suite 1070
    New York, NY 10038
    (212) 374-9101
    File No.: 1293-CDK
    (Via ECF Filing)